**UNITED STATES et al. v. MAHANEY et al.**

**No. 21184–R.**

District Court, N. D. California, S. D.

May 3, 1939.

464

Thurman Arnold, Asst. Atty. Gen., Chester T. Lane, Gen. Counsel, Securities and Exchange Commission, O. John Rogge, and John L. Geraghty, all of Washington, D. C., and Frank J. Hennessy, of San Francisco, Cal., for plaintiffs.

Sibbett & Miller, of San Francisco, Cal., for William J. Mahaney.

Keyes & Erskine, of San Francisco, Cal., for Bank of America Nat. Trust & Savings Assn.

Theodore M. Stuart, of San Francisco, Cal., for L. Mario Giannini.

Dreher, McClellan & McCarthy, of San Francisco, Cal., for Transamerica Corporation.

Bacigalupi, Elkus & Salinger, of San Francisco., Cal., for Timetrust, Inc.

ST. SURE, District Judge.

The Government seeks a temporary injunction to prevent the use by defendants, in pending adversary litigation, of confidential information obtained by William J. Mahaney while in the employ of the Government, Mahaney having been recently hired by defendant Bank of America National Trust & Savings Association, hereinafter called the bank.

The motion was heard upon the verified complaint and supporting affidavits; answers of defendants other than Mahaney, affidavits in opposition, and the "consent" of Mahaney.

On November 22, 1938, the Securities and Exchange Commission commenced a proceeding under Sec. 19(a) (2) of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. § 78s(a) (2), to determine whether the registration of Transamerica Corporation capital stock, $2 par value, should be suspended or withdrawn. In the order for hearing it is stated that the Commission has reasonable grounds to believe that Transamerica Corporation has failed to comply with certain provisions of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. § 78a et seq., and certain rules and regulations promulgated by the Commission, in that the application for registration filed by said corporation contains false and misleading statements of material facts, including financial statements of said corporation and its subsidiaries, which do not correctly reflect the true financial condition of the corporation and its subsidiaries. The false and misleading statements are particularly set forth, and in paragraphs VII and VIII of the order mention is made of the "Combined Report of Condition" of Bank of America National Trust & Savings Asso-

ciation, First National Bank in Reno, Bank of America (California) as of December 31, 1936.

On February 8, 1939, an order amending the order for hearing was made, in which appears the following:

"The Commission has reasonable grounds to believe that for several years prior to July 15, 1937, the registrant owned, directly or through a wholly-owned subsidiary, 99.65% of the outstanding capital stock of Bank of America National Trust and Savings Association; that on or about July 15, 1937, the registrant distributed to its own stockholders approximately 58% of the stock of Bank of America National Trust and Savings Association thus owned by it; that from July 15, 1937, to the date of the filing of the annual report, registrant has continued to hold approximately 42% of the outstanding capital stock of Bank of America National Trust and Savings Association while the remaining 58% has been held by approximately 150,000 stockholders, no one of whom holds as much as 1% of the stock. The Commission further has reasonable grounds to believe that the officers and directors of Bank of America National Trust and Savings Association remained substantially the same after the distribution by the registrant of 58% of its holdings in the stock of the Bank as they had been prior to such distribution; that during 1937 and at the date of the filing of the annual report A. P. Giannini was Chairman of the Board of both the registrant and of Bank of America National Trust and Savings Association, L. M. Giannini, the son of A. P. Giannini, was president of Bank of America National Trust and Savings Association, and that many of the officers and directors of Bank of America National Trust and Savings Association were also officers and directors of the registrant or of its wholly-owned subsidiaries; that a substantial portion of the business and activities of Bank of America National Trust and Savings Association during 1937 and at the date of the filing of the annual report has been effected with the registrant and its wholly-owned subsidiaries.

"It therefore appears to the Commission that during the entire year 1937 and at the date of the filing of the annual report, the registrant possessed the power to direct or cause the direction of the management and policies of Bank of America National Trust and Savings Association,

and that registrant's omission in its response to Item 1(a) of its annual report on Form 24-K to list Bank of America National Trust and Savings Association as a subsidiary of the registrant renders the response materially false and misleading."

Timetrust, Incorporated, a corporation, was organized on June 23, 1938. The complaint alleges that after an informal investigation by the Commission's staff to determine whether Timetrust is engaged in acts or practices which constituted violations of certain sections of the Securities Act of 1933, as amended, 15 U.S.C.A. § 77a et seq., the Commission, on December 21, 1938, issued a formal order for investigation. Thereafter, and on April 5, 1939, the Commission filed a complaint in this court, No. 21180–L, against L. Mario Giannini, Timetrust, Bank of America, and others, to enjoin the defendants therein from violating Sec. 17 (of the Securities Act of 1933, as amended, 48 Stat. 84, 15 U.S.C.A. § 77q(a). The complaint in action No. 21180–L alleges:

"Defendants A. P. Giannini, L. Mario Giannini and John M. Grant, aided and abetted defendant Timetrust, Incorporated and its officers, directors and agents to engage in the acts and practices which plaintiff seeks to enjoin. Defendants Bank of America National Trust & Savings Association, of which A. P. Giannini is Chairman of the Board of Directors and L. Mario Giannini is President and a director, and Meredith Parker, Ralph W. Wood and H. E. Blanchett, who are officers of Timetrust, Incorporated, and constitute the board of directors thereof, have participated and continue to participate in the acts and practices which plaintiff seeks to enjoin. * * * Since on or about August 11, 1938, defendants Timetrust, Incorporated, Meredith Parker, Ralph W. Wood and H. E. Blanchett have been and now are, selling and causing to be sold, and defendants A. P. Giannini, L. Mario Giannini, John M. Grant and Bank of America National Trust & Savings Association, have been and now are abetting the sale, by the use of the mails, securities, to-wit, (1) Timetrust Certificates, * * * and (2) common stock of Bank of America National Trust & Savings Association, a corporation, of which defendant A. P. Giannini is Chairman of the Board of Directors, and L. Mario Giannini is President and a director. Such securities are sold to the public pursuant to the terms of

an agreement of trust called a 'Trust Agreement,' dated August 16, 1938, between Timetrust, Incorporated, Title Insurance and Guaranty Company, designated the 'trustee' under the agreement, and the holders from time to time of Timetrust Certificates (therein and sometimes hereinafter referred to as 'trustors'). In the sale of such securities to the public by the use of the mails, defendants Timetrust, Incorporated, Meredith Parker, Ralph W. Wood, and H. E. Blanchett, aided and abetted by the defendants A. P. Giannini, L. Mario Giannini, John M. Grant and Bank of America National Trust & Savings Association, have employed and are employing a device, scheme, and artifice to defraud, and have obtained and are obtaining money and property by means of untrue statements of material facts and omissions to state material facts necessary to be stated in order to make the statements made, in the light of the circumstances under which they were made, not misleading * * *."

It thus appears that all of the defendants herein and others are inextricably involved in the above-described adversary proceedings.

At the opening of the hearing on the motion there was presented to the court and filed a verified "Consent by Defendant William J. Mahaney to Issuance of Permanent Injunction" against him. In his "consent" Mahaney admits his employment as attorney by the Commission from March 25, 1935, to January 3, 1939; admits during the period of such employment the institution and pendency of the proceedings under Sec. 19(a) (2) of the Securities Exchange Act of 1934 and the litigation in case No. 21180–L hereinabove particularly described; admits that he was retained as attorney for the bank by agreement with L. Mario Giannini; alleges "that a controversy has arisen" between the plaintiffs and defendants herein as to the propriety of his retention as attorney for the bank in view of his prior employment by the Commission; alleges "this defendant is now of the opinion that the propriety of his retention as such attorney for said Bank in the circumstances above described is, on general equitable grounds, open to question, and that he desires to avoid any implication of improper action on his part; that pursuant to such desire he has on April 22, 1939 tendered to the defendant, Bank of America National Trust and Savings Association, and to defendant, L. Mario

Giannini, its president, his resignation as an attorney for said Bank, and that such resignation was on that date accepted, * * *"; denies that he was retained for the purpose of disclosing, or has ever disclosed to defendants herein, or any of them, any confidential information of any kind or character obtained by him or available to him as an attorney for plaintiff, Securities and Exchange Commission; alleges "this defendant has no desire to raise any issue of fact regarding the allegations of said complaint, and the application for a temporary relief filed herein, and the supporting affidavits; and that, in consenting to the issuance of a permanent injunction as herein prescribed, he stipulates that no findings of fact or conclusions of law need be made by the Court in issuing said injunction, and requests that said injunction issue without the necessity for any hearing thereon; that in view of his resignation above set forth, and of his desire that this controversy as to the propriety of his employment be terminated, he respectfully requests this Court to issue a permanent injunction in the form above described." Whereupon the attorneys for all other defendants moved to dismiss as to them.

Defendant Mahaney is thirty-two years of age. He was admitted to practice law in 1933. From March 25, 1935, to and including January 3, 1939, he was employed on active duty with the Commission as an attorney. From June 1, 1936, up to and including January 3, 1939, except for a short period of duty in the Washington office of the Commission, Mahaney discharged his duties in San Francisco under Howard A. Judy, Regional Administrator in Charge, with offices at #625 Market Street. On January 3, 1939, Mahaney resigned from the Government service. During the course of Mahaney's employment numerous investigations of Transamerica, Timetrust, L. Mario Giannini, and other persons were being conducted by the Commission pursuant to authority vested in it by the Securities Act and the Securities Exchange Act to determine whether certain provisions of these acts were being violated. With the exception of formal public proceedings these investigations were of a private nature, and were kept in strictest confidence. During his employment Mahaney had full access to all books, records, papers, correspondence, and memoranda relating to the investigations and proceedings mentioned herein, in the San

Francisco regional office and in the Washington office.

At the time of his resignation Mahaney was being paid for his services as attorney for the Commission a salary of $4,000 a year. He was employed for part time service by the bank at a salary of $7,500 a year. Defendant L. Mario Giannini, in an affidavit, tells the story of Mahaney's employment by the bank, which is, in substance, as follows:

Giannini was introduced to Mahaney in the summer of 1938, and was informed that Mahaney was contemplating severing his relations with the Securities and Exchange Commission and going into private practice. It was suggested that as Mahaney had had four years' experience in the interpretative work of the Commission it might be advantageous to retain him to advise the bank in matters respecting the Securities and Exchange Act. On December 24, 1938, at Giannini's home in San Mateo County, he discussed the subject with Mahaney alone. Giannini told Mahaney that if he, Mahaney, could get the consent of the Commission to such employment, the bank would retain him for $7,500 a year, commencing in January, 1939. Later Mahaney reported that he had talked by telephone with Robert O'Brien, Assistant General Counsel in charge of the Commission attorneys, and with Edwin Sheridan, Executive Assistant to the Chairman of the Commission, at Washington, D. C., and they had no objection to his accepting such retainer. Giannini thereupon retained Mahaney in January, 1939, with the understanding that he was to maintain his own office and take private practice. Mahaney, at Giannini's request, made a study of the Commission's orders and charges in the proceedings pursuant to Sec. 19(a) (2) of the Securities Exchange Act of 1934 against Transamerica, many of which charges involved matters relating to the bank, a large portion of the capital stock of which was held by Transamerica; of the transcript of the testimony in said proceedings; the relations of said proceedings to and their effect on said bank; and the registration, statements, and annual reports filed by Transamerica with the Commission; and then prepared and submitted to Giannini an analytical memorandum of about seventy-five pages.

Edwin A. Sheridan, Executive Assistant to the Chairman of the Securities Exchange Commission, and Robert H. O'Brien, Assistant Counsel of the Commission, state in their affidavits that at the call of Mahaney they had a telephonic conversation with him in which he said he had received an offer of employment from Giannini which he thought he would accept. Sheridan told Mahaney acceptance was unthinkable. O'Brien told Mahaney that it would be improper and unwise for him to act as legal adviser to Giannini or affiliated interests. Mahaney replied that "he was sure a lawyer would not feel that it would violate the canons of legal ethics." He said that he had been misunderstood; that he would be associated with a well-known firm of attorneys; that the Giannini proposition was a matter for the future as there was no definite commitment on either side. Both Sheridan and O'Brien then told Mahaney that they saw no reason why he might not leave the Commission to associate with a private law firm, but that if he engaged to act as legal adviser for Giannini or affiliated interests, the matter should first be presented to the Commission.

L. Mario Giannini says he relied upon Mahaney's word that he had received the consent of the Commission to accept the proffered retainer. Giannini is not only a banker, but he is also a lawyer; yet he himself never inquired of the Commission whether consent would be given to his employment of Mahaney. Mr. Judy, Mahaney's immediate superior in San Francisco, readily accessible, was not consulted about the matter by either Giannini or Mahaney.

The Canons of Professional Ethics of the American Bar Association are addressed to the conscience of every lawyer.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. * * *

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." Canon 6, Vol. 62 Reports of American Bar Association, 1937, p. 1107.

"A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon

while in such office or employ." Canon 36, ib., p. 1118.

"No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to receive nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, * * * or corruption of any person or persons exercising a public office or private trust, or deception or betrayal of the public. When rendering any such improper service or advice, the lawyer invites and merits stern and just condemnation. Correspondingly, he advances the honor of his profession and the best interests of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact · compliance with the strictest principles of moral law. * * * But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen." Canon 32, ib., pp. 1116-1117. ·

"It is the duty of an attorney and counselor: * * *· 5. To maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client." Sec. 282, Code of Civil Procedure of California.

The resignation of Mahaney and his "consent" to the issuance of a permanent injunction against himself is tantamount to an admission of the charges made against him by the Commission. He "has no desire to raise any issue of fact regarding the allegations of said complaint, * * * and the supporting affidavits." He denies that while acting as attorney for the bank he disclosed any confidential information obtained or available to him as an attorney for the Commission. But the facts demonstrate otherwise. In his affidavit L. Mario Giannini says: *"Mahaney, at my request, made a study of the Commission's orders and charges in the proceedings pursuant to Section 19(a) (2) of the Securities Exchange Act of 1934 against Transamerica, many of which charges involved matters relating to the Bank, a large portion of whose capital stock was held by Transamerica, the transcript of the testimony in said proceedings, and the relation of said proceedings to and the effect of said proceedings on said Bank, and the registration statements and annual reports filed by Transamerica with the Commission, and he prepared and submitted to me a memorandum of approximately seventy-five pages in length setting forth the results of this study."* (Italics supplied.)

During four of the past six years since Mahaney's admission to the bar he was employed as an attorney for the Commission. It is inconceivable under the circumstances that he could render a report to, or give the bank any advice upon the adverse litigation pending between the Government and the bank without using confidential information which he acquired while acting as attorney for the Commission. All the knowledge he had which would enable him to serve the bank was gained while he was an attorney for the Commission.

Defendants contend that because of Mahaney's resignation and because any act of Mahaney's which could or might be detrimental to plaintiffs must have already been committed, the case is moot. "It is well settled that an attorney who has acted for one party cannot render professional services in the same matters to the other party, and it makes no difference in this respect whether the relation itself has terminated, for the obligation of fidelity still continues. In re Boone, C.C., 83 F. 944, 952." United States v. Bishop, 6 Cir., 90 F.2d 65, 66. There is no assurance that defendants will not hereafter continue their former course. Sears, Roebuck & Co. v. Federal Trade Commission, 7 Cir., 258 F. 307, 310, 6 A.L.R. 358; Juvenile Shoe Co. v. Federal Trade Commission, 9 Cir., 289 F. 57, 59.

Defendants' contention that the bank is not a party to any litigation with the Commission is wholly without merit, as shown by the facts hereinabove stated. There was no consent given by the Commission to the employment of Mahaney by the bank, and in the nature of things there could not be. Even Mahaney does not say that he secured the consent of the Commission. Quoting from his "consent": "In this connection he affirms that although he did not advise all persons associated with him and likewise connected with said plaintiff, Securities and Exchange Commission, of his intention to accept and the nature of said retainer feeling that · he was under no duty so to advise such persons, he did, however, take steps prior to the termination of his said employment by said plaintiff, Securities and Exchange. Commission, which he considered sufficient to advise the said Securities and Exchange Commission

of his intentions regarding his contemplated retention by said Bank."

■ It is urged that the bank relied upon Mahaney's statement that the Commission had consented to his employment, and that "therefore the employment was made in good faith and the bank was innocent of any impropriety." The court is unable to agree with this contention, and under the facts here disclosed feels constrained to disapprove of the actions of both the bank and Mahaney. The facts clearly warrant the issuance of a temporary injunction against all of the defendants.

■ Defendants' motion to dismiss will be denied, and plaintiffs' motion for temporary injunction granted. Defendant Mahaney's "consent" to a permanent injunction against him will be disregarded. Plaintiffs may prepare and submit findings of fact, conclusions of law, and decree in conformity with the Rules of Civil Procedure, 28 U. S.C.A. following section 723c, and Rule 42 of this court.