**HILO METALS COMPANY, LTD., a Corporation of Hawaii, Plaintiff,**

v.

**The LEARNER COMPANY and Flynn-Learner, Corporations of California, Hawaiian Western Steel Limited, a Corporation of Delaware, Defendants.**

**Civ. No. 2456.**

United States District Court
D. Hawaii.

Sept. 12, 1966.

Don H. Banks, Fairfax, Cal., for plaintiff.

Joseph L. Alioto and Frederick P. Furth, San Francisco, Cal., for Learner Company and Flynn-Learner.

Smith, Wild, Beebe & Cades, Honolulu, Hawaii, for Hawaiian Western Steel Ltd.

MEMORANDUM OPINION

JAMESON, District Judge.

Plaintiff seeks an injunction and treble damages for alleged violations by defendants of Sections 1, 2 and 3 of the Sherman Act (15 U.S.C. §§ 1, 2 and 3) and Section 3 of the Clayton Act (15

U.S.C. § 14).[1] Defendants have filed a motion to disqualify Don H. Banks from further participation as counsel for plaintiff by reason of alleged violation of Canon 36 of the Canons of Professional Ethics of the American Bar Association, which reads in pertinent part:

"A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ."

It is conceded that the Canons of Ethics of the American Bar Association are applicable in this proceeding by reason of their adoption for the State of Hawaii by Rule 16(a) of its rules of court.[2]

Plaintiff, Hilo Metals Co., Ltd., is a Hawaii corporation engaged in the business of buying, selling, and exporting scrap metal. Defendants The Learner Company and Flynn-Learner are California corporations engaged in the same business. Defendant Hawaiian Western Steel Ltd. is a Delaware corporation which operates a steel mill in the State of Hawaii.

In 1962, the United States filed three actions naming The Learner Company and Flynn-Learner, (among others) as defendants. Two of the actions were criminal, brought under the Sherman Act.[3] The third was a civil action for damages under the Clayton Act.[4] The present action was instituted in 1965, Don H. Banks appearing as one of the counsel for plaintiff.

One of the criminal actions and the civil action instituted by the United States, both involving price fixing and fraud were tried. The other criminal action, involving monopolization, was dismissed. It is conceded that this criminal action involved the same issues of fact as the present action.[5]

Prior to his retirement for disability in April, 1964, Don H. Banks had been employed for more than 14 years by the Antitrust Division of the Department of Justice in its San Francisco Office, and during the latter part of the period "would be classified as at least Assistant Chief Trial Attorney of the San Francisco Office". (Banks' dep., p. 4.). With commendable candor Mr. Banks has admitted that he "participated in the subject matter of this action while holding public office as an attorney for the Antitrust Division of the Department of Justice".[6]

There is no suggestion that any interest of the present plaintiff is adverse to that of Mr. Banks' former employer, the

---

1. Jurisdiction is invoked under Sections 4 and 12 of the Act of Congress of October 15, 1914, C. 323, 38 Stat. 731 as amended (15 U.S.C. §§ 15, 22), commonly known as the Clayton Act.

2. See United States v. Trafficante, 5 Cir. 1964, 328 F.2d 117.

3. 15 U.S.C. sections 1–3; 18 U.S.C. section 371.

4. 15 U.S.C. section 15a; 40 U.S.C. section 489.

5. Mr. Banks' deposition reads in pertinent part:
"A I am not sure what you are referring to, but I will testify again that the current complaint and the monopolization indictment which was dismissed are virtually the same."
*     *     *     *     *
"A I testified, and will testify again that the first two cases which were tried out in Honolulu by the Government contained no issues of fact or law which are present in the current case. I have not testified that while I was with the Department which could be involved ters involving monopolization.
"Q So there could be issues of fact or law which you considered while at the Department which could be involved in Hilo v. Learner?
"A Not only could be, there are." (Banks' dep., pp. 42, 42–A).

6. In his memorandum opposing the motion to disqualify, Mr. Banks stated: "I did participate in the investigation of the subject matter of this case while holding public office as an attorney for the United States Department of Justice, Antitrust Division." A supporting affidavit recites that "during the year of 1961 he did participate in action taken by the Antitrust Division to investigate the scrap metal industry in the State of Hawaii".

Department of Justice. Accordingly neither 18 U.S.C. § 284 [7] nor Canon 6 [8] of the American Bar Association Canons of Ethics is applicable. Nor was there any breach of Canon 37, since Mr. Banks obtained the permission of the Department of Justice before agreeing to represent plaintiff in this action.[9]

The facts relating to Mr. Banks' participation in the investigation by the Antitrust Division of the Department of Justice of the scrap metal industry in Hawaii are not in dispute, although the parties disagree with respect to the inferences which may be drawn therefrom. His participation included the preparation of a request for an investigation by the Federal Bureau of Investigation of alleged antitrust violations in the Hawaii scrap metal industry; the examination of copies of documents taken by the F.B.I. from the files of the defendants Learner and Flynn-Learner; interviewing Norman Kronick and Louis Dulien in connection with a complaint received from Harry Kronick concerning alleged monopolization of the scrap metal business in Hawaii; examination of the files of the Dulien Steel Products, Inc. in Seattle, Washington, including correspondence between Dulien and The Learner Company; and the removal for the purpose of making copies of numerous documents which he considered "relevant to the investigation of monopolization by The Learner Company and its subsidiary, Flynn-Learner". (Aff. attached to Banks' deposition as Ex. 4.)

The foregoing represents direct participation by Mr. Banks in the investigation of alleged violations of the antitrust laws in the scrap metal industry in Hawaii. In September, 1962, Mr. Banks attended a conference in Washington, D. C. to discuss the possibility of an investigation of the scrap metal industry in continental United States, but according to Mr. Banks the investigation of the scrape metal industry in Hawaii had been completed and indictments filed. Mr. Banks "manned" the Honolulu Antitrust Office of the Department of Justice during the trial of the criminal action involving price fixing in which The Learn-

7. Title 18 U.S.C. section 284 provides:
   "Whoever, having been employed in any agency of the United States, including commissioned officers assigned to duty in such agency, within two years after the time when such employment or service has ceased, prosecutes or acts as counsel, attorney, or agent for prosecuting, any claims against the United States involving any subject matter directly connected with which such person was so employed or performed duty, shall be fined not more than $10,000 or imprisoned not more than one year, or both."

8. Canon #6 of the Canons of Professional Ethics of the American Bar Association provides in part:

   \*     \*     \*     \*     \*

   "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

   "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

9. Canon #37 of the Canons of Professional Ethics of the American Bar Association provides in part:
   "It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client."

   \*     \*     \*     \*     \*

er Company and Flynn-Learner and others were defendants. He did not participate in the conduct of the trial, although he was present in court during portions of the trial as a spectator, and the trial attorneys would tell him "what happened" when thy returned to the office. (Banks' dep., p. 26.) As an attorney in the San Francisco office of the Department of Justice, Antitrust Division, Mr. Banks, with other attorneys, had access to the files of the office.

The defendants contend that these facts are sufficient to require Mr. Banks' disqualification from further participation in this action. Mr. Banks argues that the defendants have failed to show that his participation in the investigation would result in injury to the public, the Government, or any parties to this action, and that Canon 36 accordingly is not applicable.

Most of the decided cases have involved questions of conflict of interest, not here present, or to the extent to which knowledge of the matter under investigation may be imputed to an attorney for a government agency by reason of access to files and other information. Here the alleged violation of Canon 36 involves "actual" knowledge and participation on the part of Mr. Banks.

In an article on "The Former Government Attorney and Canons of Professional Ethics", 70 Harv.L.Rev. 657, 661 (1956–7), Judge Irving R. Kaufman considers the "boundaries of imputation" of attorneys for government agencies and recognizes the distinction between actual participation and the "likelihood" that information was accessible to the attorney. He wrote in pertinent part:

" * * * Canon 36, enacted after Canons 6 and 37 to clarify the application of those canons to the former government attorney, affords some guidance on this point by the use of the words 'which he has investigated or passed upon'. It implies a test of actual personal knowledge of the action. If there was a likelihood that informa-

tion pertaining to the pending matter reached the attorney, although he did not 'investigate' or 'pass upon it', however, there would undoubtedly be an appearance of evil if he were not disqualified * * * Thus in the absence of proof of actual knowledge, the likelihood of having received the relevant information would be controlling."

Both parties rely upon United States v. Standard Oil Company, S.D.N.Y.1955, 136 F.Supp. 345, in which the Government sought to disqualify a law firm appearing for the defendants in an action to recover for alleged overcharges in transactions financed by the Economic Cooperation Administration. A member of the firm had been government counsel for the Paris office of the Economic Cooperation Administration. There was no evidence that the attorney had any personal knowledge of the transactions in dispute or that any of his work related to the subject of the case. The court specifically found that the Government had failed to prove (1) that the attorney "had access to documents substantially related to the subject matter of the instant case; (2) that he ever had access to and/or actually saw or worked on any relevant confidential material; (3) that he ever investitaged or passed upon the subject matter of the instant case; (4) that he ever rendered any legal advice or opinion in relation to the regulations which are the subject matter of the instant case"; and (5) that his present position did not create "an appearance of evil requiring disqualification". (136 F.Supp. at 365–366).

In a well-considered opinion, Judge Kaufman discusses at length Canons 6, 36 and 37. With particular reference to Canon 36 he says in part:

"This Canon forbids a former government attorney to accept employment 'in connection with any matter which he had *investigated* or *passed upon* while in such office or employ'. The main purpose of this Canon was to

clarify the duties in Canon 6 as related to government attorneys—chiefly, it avoids the 'client' language of Canon 6 which presents serious difficulties in this sphere. Although it cannot be considered as completely superseding Canon 6 in dealing with a lawyer's duty to a former client Canon 36 undoubtedly serves as a guide to the chief purpose of the ethical principle involved and the words 'investigated' or 'passed upon' imply a test of actual personal knowledge or action." (136 F.Supp. at 361).

Judge Kaufman then considers the "appearance of evil" tests in the absence of actual personal knowledge or action. He continues in part:

"The language of that Canon, however, must be held to require that a practical test be employed in deter-

mining when an appearance of evil exists: i. e. in each instance the fact finder must determine whether it was likely that the particular government attorney would have attained knowledge of or taken a stand on the subject matter of the particular controversy. If there is no practical likelihood, there is no appearance of evil." (136 F.Supp. at 362).[10]

The instant case is factually distinguishable from the Standard Oil case. It is clear that Mr. Banks had access to documents related to this case, that he saw relevant confidential material,[11] and that he actually investigated the subject matter. In fact this case was considered by Mr. Banks as a continuation by a private litigant of the criminal action involving monopolization instituted by the United States.[12]

10. In a footnote (n. 29) Judge Kaufman says further:

"Further, the words 'investigated' or 'passed upon' seem indicative of a requirement that an attorney has done more than *see* certain confidential files. Although the cases discussing the access rule have not considered this point, a possible explanation for their not having done so is that, in those cases, it was clear that the attorney in question had done far more than just accidentally see or briefly peruse and initial a related document. * * * Again, common sense dictates than an attorney should not be disqualified where actual knowledge of the controversy based on his former employment is nonexistent, but this stricture must be considered in relation to the problem of avoiding the appearance of evil. Once more, an *ad hoc*, practical approach to the specific factual problems in each case is indicated." (136 F.Supp. at 361.)

11. It is apparent from the deposition of Lyle L. Jones, Chief of the San Francisco office of the Antitrust Division of the Department of Justice, that the files of this office would not be available to counsel for the defendants. Mr. Jones testified in pertinent part:

"Q Now, we won't ask for these unless it's absolutely necessary, but if Judge Tavares determined that it was

necessary for us to review—it was necessary to have a review of the files of the Department in relation to this particular matter, as to what Mr. Banks had done and what the office generally had done, would those files be available to us?

"A No, they would not. The Attorney General has for a long time maintained a pretty firm policy against intrusion upon Government records."

12. In referring in his deposition to conversations with various attorneys in the Antitrust Division, Mr. Banks testified in part:

"Q Did you mention the fact that you filed this case in Hawaii?

"A That was the purpose of the conversation.

"Q Can you explain that to me?

"A Well, this case was filed subsequent to the dismissal by the Government of the monopolization case, and more out of friendship than anything else, I wanted to let the people who were involved in the case know that the case was being carried on, in effect.

"Q By a private litigant?

"A By a private litigant. I believe I also wrote Mr. Alioto.

"Q In fact, what you told him, if they couldn't win it, maybe you could.

"A Well, if I didn't say so directly, I at least inferred it." (Banks' dep., p. 34.)

In United States v. Trafficante, 5 Cir. 1964, 328 F.2d 117, an attorney employed by the Internal Revenue Service handled income tax claims against the defendant in 1959. In 1962, the United States brought suit for the foreclosure of liens for the same taxes. The attorney was representing the defendant in the foreclosure action. He asserted that the matter was entirely unrelated to work performed during his government employment. The district court denied a motion to disqualify. In reversing, the Court of Appeals said in pertinent part:

"The prohibition of Canon 36 is against acceptance of employment 'in connection with any matter which he has investigated or passed upon while in such [public] office or employ.' * * * *It is not necessary, in order that disqualification result from a prior employment, that it be shown that the attorney acquired knowledge while representing the prior client which could operate to his disadvantage in the subsequent adverse representation.*" (328 F.2d at 120). (Emphasis added.)

Canon 36 has been interpreted by the American Bar Association Committee on Professional Ethics and Grievances in a number of opinions. Opinion #135 concerned a public prosecutor who had investigated an automobile accident pursuant to his official duties. The prosecutor decided that there was no criminal responsibility. Later he was retained in a private capacity by one of the parties involved in the accident to recover damages for injuries sustained in the accident. The opinion assumed that as public prosecutor he "acted in good faith and without contemplation of employment in any subsequent civil action growing out of the accident".[13]

The Committee found that his subsequent representation of one of the parties in the civil action was unprofessional. It reasoned that when an attorney conducts an investigation under color of office, he may have a coercive effect on persons he questions. This in turn might lead these persons to divulge information which could be used against them later in a civil action. The Committee then stated in part:

"If the lawyer making the approach does so under sanction or color of official power, he thereby more certainly disqualifies himself from later participation as counsel in any civil litigation having its basis in or connected with the occurrence previously investigated as to its potential criminal aspects."

The philosophy of Canon 36 was well stated by the Committee in its opinion #49. With particular reference to that portion of the canon here involved, the opinion reads:

"*Canon 36* is divided into two paragraphs, the first applying to lawyers who have acted in a judicial capacity and the second to those who have held public office or have been in public employ. In *Opinion 26*, we stated that the second paragraph of the canon:

was intended to forbid a lawyer accepting private legal employment in any matter involving the same facts as were involved in any specific question which he had previously investigated while in public office or public employ.

and, in *Opinion 37*, when referring to *Opinion 26*, we stated:

The basis of this decision was that as a public legal official he was acting for the state, and he should not later accept any private employment in the same matter (*whether for or against his former opinion or position*), on account of the manifest possibility that his action as a public legal official might be influenced (or be open to the charge that it had been influenced) by the hope of later being employed privately either to

13. There is no evidence in the instant case that Mr. Banks did not act in good faith or that he contemplated employment in any subsequent civil action at the time he retired from his government employment.

uphold or upset what he had done." (Emphasis added.)

From the plain wording of Canon 36, its construction by the courts, and its interpretation by the American Bar Association Committee on Professional Ethics and Grievances, I must conclude that Mr. Banks is disqualified from further participation in this action by reason of his investigation of the subject matter while he was employed by the Antitrust Division of the Department of Justice.

The motion is granted.