ALLIED REALTY OF ST. PAUL, INC.,
Plaintiff,

v.

EXCHANGE NATIONAL BANK OF CHI-
CAGO, Gertrude Brown, Phillip Kitzer,
Sr. and Helen Kitzer, his wife, and Phil-
lip C. Kitzer and Helen Kitzer, his wife,
Defendants.

No. 3–65 Civ. 309.

United States District Court
D. Minnesota,
Third Division.

April 15, 1968.

See, also D.C., 278 F.Supp. 849.

Briggs & Morgan, by David Forsberg, and Sidney P. Abramson, St. Paul, Minn., for plaintiff.

Best, Flanagan, Lewis, Simonet & Bellows, by Harold Evarts, Minneapolis, Minn., D'Ancona, Pflaum, Wyatt & Ris-

kind, by Edgar Bernhard, Chicago, Ill., for defendants.

NEVILLE, District Judge.

Involved here is the applicability of Canon 36 of the American Bar Association Canons of Professional Ethics, which Canons were adopted by the Minnesota Supreme Court May 2, 1965 as standards of professional conduct. The canon provides in relevant part:

"A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ."

Plaintiff by motion seeks declaratory relief that a lawyer, Sidney P. Abramson, whom it has engaged as one of its counsel in this case, by so acting neither has nor is engaged in unprofessional or unethical conduct. Defendant seeks an order to the contrary, barring Abramson's serving in such capacity and requesting other relief.

A related matter has been before this court before. Exchange Nat'l Bank of Chicago v. Abramson, 278 F.Supp. 849 (D.Minn.1968). The question herein was not squarely met in that case, though on review the Court of Appeals rendered the matter moot by holding this court to be without jurisdiction. Exchange Nat'l Bank v. Abramson, No. 19,188, (8th Cir., filed Feb. 15, 1968).

A brief history is necessary. In 1965 the Federal grand jury sitting in Minnesota returned indictments against some 14 or more individuals for alleged criminal activity growing out of the failure and ultimate insolvency of American Allied Insurance Company. Three of the former employees of defendant Bank were among those so indicted. The plaintiff in this case, Allied Realty of St. Paul, Inc., is a wholly owned subsidiary of said Allied Insurance Company. At the time of the indictments, Abramson was employed full-time as an Assistant United States Attorney for the District of Minnesota, though he had little or nothing to do at that time with the handling of the indictments. He resigned as an Assistant United States Attorney in late 1966 to enter the private practice of law. A month or so later he was requested to return to government employ solely to become a Special Assistant United States Attorney to aid and assist in the preparation and act as "second chair" in prosecuting the criminal trials. The actual trial being removed to Bismarck, North Dakota on defendants' motion for change of venue lasted 13 weeks and is now embodied in some 17,000 pages of transcript. The trial proceeded only against those who were regarded by the government as the principal defendants, including Phillip Kitzer, Sr. and Phillip C. Kitzer, who are also defendants in this action and alleged to have been at all times here relevant the principal owners and officers of American Allied Insurance Company and the principal officers of plaintiff herein, Allied Realty. The trial resulted in jury verdicts of not guilty as to each of the defendants then on trial including the Kitzers. The indictments as to the other defendants, including the three former employees of defendant Bank, were thereupon dismissed. Abramson's service with the government ceased shortly thereafter pursuant to his own wish.

In 1965, prior to the federal indictments, a Receiver for the affairs of American Allied Insurance Company had been duly appointed by the Minnesota State District Court in Ramsey County. The present action above-entitled in fact was commenced prior to the return of the federal indictments, and is an action seeking to set aside a claimed fraudulent mortgage on Minnesota real estate issued by plaintiff Allied Realty Company and running in favor of the defendant Bank. It appears that this claim of a fraudulent mortgage as to this transaction was involved and asserted at some stage in the 13 week criminal trial at Bismarck, North Dakota. It is asserted in the complaint in this case, that the Kitzers, as principal officers and directors of

plaintiff engineered the claimed fraudulent mortgage or mortgages and certain other transactions.

In connection with his activities at the criminal trial, Abramson is very frank to admit that he was intimately associated on the Government's side with the trial of the criminal case and sat through the entire trial. He became aware of, or certainly had access to, various FBI and postal inspectors' written and oral reports and had knowledge of, and available to him, the grand jury minutes and all grand jury and government exhibits. He assisted extensively in the trial preparation. Prior to the institution of the criminal action by the federal government, a number of plaintiff's records were subpoenaed and submitted to or used before the indicting grand jury. Many of the same documents, however, and perhaps others were actually used in the criminal trial. It was some several months after completion of the criminal trial that the Receiver for American Allied Insurance Company requested Abramson to associate himself as one of the counsel in this case. The Receiver did this for the reason, as set out in his petition to the District Court of Ramsey County, Minnesota, that:

"The employment of Mr. Sidney P. Abramson as special counsel in these matters should, in the opinion of the petitioner, be generally advantageous to the receivership estate and should likewise result in substantial over-all saving of legal time and expense to the estate by virtue of the extensive knowledge and background Mr. Abramson now has in respect to matters particularly relating to the Exchange National Bank of Chicago as a result of his participation as Special Assistant to the United States Attorney in the criminal trials recently concluded at Bismarck, North Dakota, involving the trial of certain former officers of American Allied Insurance Company and Allied Realty of St. Paul, Inc."

The Receiver employed Abramson, pursuant to the order of the Ramsey County court as special counsel (1) to associate himself as attorney in this case and (2) to institute a new action to recover funds from this defendant for other matters and various transactions. The latter case, while still in the threatened stage and before actual service of any complaint was challenged by a separate suit brought by the defendant Bank in this court. It was in this separate suit, the object of which was to enjoin the Allied Receiver from the bringing of a threatened suit so long as Abramson represented him, that the Court of Appeals held the jurisdictional amount of $10,000 was lacking. Such a jurisdictional lack cannot, it seems to this court, be asserted or claimed in the present proceeding which is not a separate suit solely to challenge Abramson, but is a motion in a presently pending suit (which itself clearly involves more than the jurisdictional minimum) to bar Abramson's association as counsel for plaintiff.

It should be clearly noted that this is not a case wherein an attorney leaves the government employ and becomes retained by the person or company against whom the government has been proceeding. Such would be "switching of sides" in direct contravention of Canon 6 of the aforesaid Canons. No such charge is here made. The position Abramson now takes is consistent with and not adverse to the one he took while with the government.

Nor does the situation at hand involve Canon 37 which prohibits the disclosure of the client's private and confidential information, for there has been filed with this court a full consent to Abramson's proceeding in this matter, signed by the United States District Attorney for the District of Minnesota.

In its brief, counsel for defendant says of Abramson:

" * * * both informally in Your Honor's Chambers, and on the record at the hearing on our motion for preliminary injunction, we made clear that we are not only *not* attacking the Defendant's character or integrity but we are saying affirmatively that we are

satisfied—as no doubt the Court is satisfied—that Mr. Abramson's breach of Canon 36 was inadvertent." (Emphasis added.)

The court quite agrees with and endorses this statement.

■ The question then comes down to whether an attorney who has "investigated" or "passed upon" a particular matter while in the government employ may avail himself, after his government service, of a private legal retainer which involves not just his experience, knowledge and expertise acquired while in the government employ, but involves the use of his knowledge of a particular case or proceeding. It is this latter which makes Abramson's employment particularly valuable to the Receiver in this case, and which this court feels it necessary to condemn. Many a lawyer who has served with the government has an advantage when he enters private practice because he has acquired a working knowledge of the department in which he was employed, has learned the procedures, the governing substantive and statutory law and is to a greater or lesser degree an expert in the field in which he was engaged. Certainly this is perfectly proper and ethical. Were it not so, it would be a distinct deterrant to lawyers ever to accept employment with the government. This is distinguishable, however, from a situation where, in addition, a former government lawyer is employed and is expected to bring with him and into the proceedings a personal knowledge of a particular matter—for which the government paid him while he was learning it and for which now the client who employs him theoretically will not have to pay. This, it seems, is the situation in the present case and exactly the type of involvement which Canon 36 was designed to prevent.

The distinction attempted to be made that Abramson technically did not "investigate" or "pass upon" within the meaning of Canon 36 is tenuous, when it is considered that he devoted many hours to preparation for trial and spent the 13 weeks in the court room substantially every day if not every day assisting at trial. Such activity certainly is within the pale of Canon 36.

Five pages from the lengthy criminal trial transcript were introduced and received at the hearing before this court. These pages indicate that the government in the criminal trial attempted to show, through a series of exhibits, the mortgage transaction involving the Minnesota real estate, the subject of the present case. Neither the Receiver nor Abramson argue that this mortgage is not the same mortgage as the one involved in this case nor that such evidence was not adduced in the criminal trial. Abramson in fact reviewed many documents with officers of defendant Bank in preparation for trial, including the aforesaid mortgage documents.

Abramson does not contend that he did not marshal the documents relevant to the Minnesota mortgage transaction. Indeed, his statement which is very frank that he saw every Bank document put in evidence, coupled with the transcript showing Bank records being introduced, compels the conclusion that Abramson passed upon them with more than a mere summary perusal. Additionally, Abramson questioned Bank employees and participated in numerous pretrial procedures.

■ In November, 1967, after his appointment, Abramson moved the court to amend the civil complaint on the ground "that information available to plaintiff as the result of a proceeding entitled United States vs. Phillip Kitzer, Sr., et al, concluded in June of 1967, produced information thereto unknown to the plaintiff bearing upon the facts of the above-entitled matter." While it is true that the realty transaction was not one of these transactions set out in the criminal indictment, nevertheless, evidence thereof was adduced at that trial. In sum, the court holds that the mortgage transaction constituted at least a part of the subject matter of the criminal trial and that Abramson, as Special

Assistant United States Attorney, "investigated" and "passed upon" such matters within the meaning of Canon 36.

Defendant Bank submits that Hilo Metals Co. v. Learner Co., 258 F.Supp. 23 (D.Hawaii 1966) dealt with an identical factual situation and should be followed here. Abramson, on the other hand, suggests that *Hilo* is distinguishable on several grounds, and in any event argues that it reaches an unwarranted result. In *Hilo,* an attorney had been employed by the Justice Department, Antitrust Division, and had actively engaged in the investigation and prosecution of criminal antitrust actions against the Learner Company. After retiring from the Justice Department, he accepted employment with Hilo Metals Co., Ltd., for the purpose of prosecuting on its behalf a private treble damage antitrust suit against the same defendant, the Learner Company. Defendant contended that the attorney had violated Canon 36 and should be disqualified. The court so held.

Since the court has found that Abramson investigated and passed upon the subject matter of the realty transaction involved in this case, the *Hilo* decision is highly persuasive authority. Abramson attempts to distinguish the instant circumstances on several grounds. First, it is argued that defendant Bank was not a defendant in the criminal action, but simply occupied the status of a witness; Second, the Bank is quasi-public, and therefore it should not be permitted to argue that it would not have turned its records over to Abramson but for the official position he then held; Third, the Receiver now employing Abramson is also quasi-public and should not be penalized against the public interest; Fourth, Abramson was in only an insignificant role as Special Assistant and therefore could not use his authority to prepare the case to benefit a subsequent private client; and Fifth, the action. herein is not a continuation of the criminal matter in any respect whatsoever. The court acknowledges that the above contentions are for the most part true, but does not believe that such

constitute legally significant distinctions from *Hilo*. This view is taken because the policy behind Canon 36 and the *Hilo* case is not altered in any respect by the distinctions asserted by Abramson. That policy is best articulated in conjunction with a discussion of Canon 36 set out by Judge Kaufman in The Former Government Attorney and the Canons of Professional Ethics, 70 Harv.L.Rev. 657 (1957), which is perhaps the only comprehensive discussion of Canon 36 available in the literature.

Judge Kaufman observes that Canon 36, in conjunction with Canons 6 and 37, have two broad and basic purposes. First, they seek to protect a client's confidential communications. Second, they attempt to avoid an "appearance of evil." It is true that neither confidentiality nor conflicting interests are here involved. Canon 36 does not speak in terms of either. Both Canon 36 and the *Hilo* decision applying it are justified on the "appearance of evil" rationale if for no other reason.

When a government attorney resigns and enters private law practice, and if he is permitted to seek employment in a matter which he has previously handled for the government, he is in a position either to charge a client a fee because of his knowledge acquired through his former office, in which event he is then being remunerated twice in essence, or if he does not charge a fee therefor, the private litigant fortunate enough to obtain his services places the adverse party at a disadvantage both economically and strategically. Even when neither of these results transpire, there is certainly "an appearance of evil" which this court finds justifies the disqualification of such attorneys.

United States v. Standard Oil Co., 136 F.Supp. 345 (S.D.N.Y.1955) is the decision which apparently precipitated Judge Kaufman's article in the Harvard Law Review. Judge Kaufman wrote the opinion in that case, holding that the government must prove that an ex-government attorney investigated or passed up-

on the subject matter involved to justify disqualifying him in a subsequent civil suit. Although the case is inapposite to the instant facts, because it involved representation without the approval of the United States government, Judge Kaufman noted another possible "appearance of evil" prevalent in these circumstances. He referred to H. S. Drinker, Legal Ethics p. 130, where the problem is discussed of preventing "even the appearance that the government servant may take a certain stand in the hope of later being privately employed to uphold or upset what he had done." 136 F. Supp. at 359. A rule of law permitting government attorneys to seek employment after retirement dealing with identical subject matter would permit the argument that while in the public employ they investigated and prosecuted only those matters conducive to successful civil employment later. There is absolutely no evidence that Abramson in the instant matter, intended to so aid his practice in working as Special Assistant, but the "appearance of evil" so detrimental to the profession appears to be present. Again the wisdom of Canon 36 and the *Hilo* decision is shown.

As United States v. Standard Oil Co., supra, was inapplicable to the instant case, so is United States v. Mahaney, 27 F.Supp. 463 (N.D.Cal.1939), which is another decision dealing with advocacy of conflicting interests without permission of the former government client. Only the *Hilo* decision bears directly on the facts at bar. Because of the policies beind that decision as pointed out above, the court follows that case.

The defendant Bank also points to Opinion 135 of the American Bar Association Committee on Professional Ethics and Grievances as authority for its position. In that opinion the Committee condemns a practice whereby a public prosecutor accepts employment from one of the parties to an automobile accident case after investigating the case from a criminal standpoint for the State and declining to prosecute. The rationale used by the Committee noted the coercive effect that a prosecutor may have on private individuals he interviews and may lead them to divulge information that could be used in a civil action. The opinion reads in part as follows:

"If the lawyer making the approach does so under sanction or color of official power, he thereby more certainly disqualifies himself from later participation as counsel in any civil litigation having its basis in or connected with the occurrence previously investigated as to its potential criminal aspects.

A prosecutor cannot profit by information gained in the course of performance of his duties as a public official. Public policy forbids. Aldridge v. Capps, 56 Okl. 678, 156 P. 624."

The Bank contends that the same rationale is available in this case, though Abramson argues in effect that here the Bank is such a sophisticated witness that it was in no fashion coerced by the government. While Abramson may in fact be correct in his analysis, the court believes that on a policy basis, it cannot make a subjective determination each time a similar situation arises and that in general a prohibition should visit exgovernment attorneys who have been involved with particular matters and later contemplate private civil employment in the same matters. The same finding is true with regard to numerous other minute distinctions counsel attempts to show to distinguish the instant case from *Hilo* and the policy of Canon 36. A quote from *Hilo* is appropriate:

"The philosophy of Canon 36 was well stated by the Committee in its opinion #49. With particular reference to that portion of the canon here involved, the opinion reads:

\* \* \* \* \* \*

'In *Opinion 26*, we stated that the second paragraph of the canon:

was intended to forbid a lawyer accepting private legal employment in any matter involving the same facts as were involved in any specific question which he had previ-

ously investigated while in public office or public employ.

and, in *Opinion 37,* when referring to *Opinion 26,* we stated:

The basis of this decision was that as a public legal official he was acting for the state, and he should not later accept any private employment in the same matter (*whether for or against his former opinion or position*), on account of the manifest possibility that his action as a public legal official might be influenced (or be open to the charge that it had been influenced) by the hope of later being employed privately either to uphold or upset what he had done.' (Emphasis added.)"

Under the above interpretations of Canon 36 and the present state of the case law, Abramson must be disqualified as an attorney in this matter.

Defendant, in its counter motion, has requested an order restraining and enjoining Abramson and "his agents, servants, employees and attorneys, and all persons in active concert or participating with him" from:

(a) participating further as counsel in this case;

(b) using evidence, knowledge or information examined or obtained by Abramson in connection with this and any other litigation; and

(c) commencing any action against defendant Bank in the United States District Court in Chicago, Illinois.

As to (a) above, the court does not feel it has authority, nor is the court inclined, to enjoin or remove other attorneys for the Receiver from continuing so to serve in this or any other case.

As to (b) above, there is no showing that plaintiff intends to use anything but documents, testimony and information that have become public by virtue of inclusion in the aforesaid 13 week criminal trial at Bismarck plus any documents and information that could normally be discovered from defendant or others by discovery proceed-ings under Rules 26 through 37 of the Federal Rules of Civil Procedure. The court therefore does not suppress or deem "tainted" or "immunized" any of plaintiff's intended proof at the trial even though such may have been "examined or obtained" by Abramson.

Relative to (c) above, the Receiver certainly is free to commence any action it desires, and such is not being enjoined by this court. The court does not wish in any way to prohibit the Receiver from continuing this lawsuit nor endeavor to thwart his prosecution of any other lawsuit in any fashion, except for the disqualification of Abramson. Again, the court by this decision does not impugn in any way Mr. Abramson's character or integrity.

A separate order has been entered herein in accordance with the views expressed in this opinion.