Richard PRICE and Doris Price and
Casablanca Meat, Inc. and
Price Bros., Inc.

v.

ADMIRAL INSURANCE COMPANY, First State Insurance Company, Anthony Williams Ames, and Bellefonte Insurance Company.

Civ. A. No. 78–2812.

United States District Court,
E. D. Pennsylvania.

Sept. 28, 1979.

---

Bernard M. Berman, Media, Pa., for plaintiffs.

Stephen A. Cozen, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the motion of the plaintiffs to disqualify the law firm

of Cozen, Begier & O'Connor ("the Cozen firm"), and any of its partners or associates, from representing the defendants in the instant litigation. For the reasons stated below, the plaintiffs' motion will be granted.

This action arises from an explosion and fire which occurred on November 20, 1976, severely damaging the business premises of the plaintiffs, located at 726–728 West Third Street, Chester, Pennsylvania. Plaintiffs Richard and Doris Price, as owners of the building, and plaintiff Casablanca Meat, Inc., as tenant of the building, made claims for various elements of loss against the defendant insurance companies under casualty loss policies then in effect. The defendants retained the Cozen firm almost immediately after the fire. After a thorough investigation, these claims were denied on September 29, 1977. For the purpose of the instant motion to disqualify, it is sufficient to note that the demands for payment under the policies were denied on the ground of the defendants' belief that the fire was not an accident or the result of vandalism but was in some way caused by the acts of some or all of the insureds. The plaintiffs instituted an action in the Court of Common Pleas of Delaware County, Pennsylvania, and on August 23, 1978, the defendants exercised their right of removal to this Court, pursuant to 28 U.S.C. § 1441. The Court has examined the record and finds that there exists diversity of citizenship, that the amount in controversy exceeds $10,000 and that, accordingly, this Court has jurisdiction.

The instant motion to disqualify the Cozen firm from representing the defendants is based on the fact that an associate employed by that firm, David R. Strawbridge, Esquire ("Strawbridge"), was deeply involved in a criminal investigation by the United States Attorney's Office into the allegedly suspicious origins of the fire while he was employed by that office as a prosecutor.

The Court, cognizant of its duty and obligation to supervise the professional activities of attorneys practicing before it, *Rich-* *ardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385–1386 (3d Cir. 1972), held a hearing on the matter and heard testimony, as well as the arguments of counsel. Based upon the evidence submitted and the representations of counsel, the Court makes the following findings:

In light of the allegedly suspicious nature of the fire at 726–728 West Third Street, an intensive criminal investigation was conducted by the United States Attorney ("U.S. Attorney") and the Bureau of Alcohol, Tobacco and Firearms ("ATF"). Strawbridge joined the U.S. Attorney's Office as an Assistant U.S. Attorney in October of 1976 and, while the investigation into the fire was initially managed by another staff attorney in that office, there came a time when Strawbridge became responsible for its continuation. While he was working on the case, Strawbridge worked on many other investigations and prosecutions, as is the practice in the U.S. Attorney's Office. However, during a period of "somewhat less than a year," he had considerable involvement with the contents of the file, the investigative reports of the ATF and with the various persons involved in the case, including some of the plaintiffs. Specifically, he had possession of the file itself, which he reviewed upon receipt. He conferred with various ATF agents, including the case agent, Robert Piccirrilli. In addition, he questioned plaintiff Richard Price and the sole owner of plaintiff Casablanca Meat, Inc., Lee Miraglia, before the grand jury in the fall of 1977 in regard to the very fire that is the subject of the present civil lawsuit. Price was before the grand jury for two and possibly three lengthy sessions, each lasting "a couple of hours." Miraglia was before the grand jury during a single session. Neither Price nor Miraglia invoked any claim of privilege but testified under oath as to their recollections of the events in question.

During the investigation, Strawbridge was aware of the Cozen firm's involvement in the case and had contact with the firm regarding his future employment there. When he decided to join the Cozen firm,

Strawbridge demonstrated a proper concern for his ethical obligations by consulting with his superiors in the U.S. Attorney's Office as to what course of action he should take with regard to the disposition of the criminal investigation. It was determined that it would be improper for Strawbridge to make a final prosecutorial decision, in light of his joining the Cozen firm. However, he was permitted and did make a "recommendation," the exact nature of which was not disclosed. No actual prosecution of the plaintiffs has been undertaken.

Strawbridge joined the Cozen firm on June 1, 1978. He stated at the hearing that he had not taken part in the firm's preparation of the defense in this case and that he had not discussed the criminal investigation with any attorney associated with the firm, except to the extent necessary to oppose the instant motion to disqualify. Similarly, Strawbridge represented to the Court that he would not, in the future, discuss the criminal investigation with any attorney in the Cozen firm.

 This motion to disqualify was filed on June 28, 1979, after the case was placed on the Court's trial list. Plaintiffs did not discover Strawbridge's association with the Cozen firm until several weeks before that date when plaintiff Richard Price was in the firm's offices on a discovery matter related to this case and happened to recognize Strawbridge as the prosecutor who questioned him before the grand jury during the criminal investigation. Defendants argue that the plaintiffs have waived any objection to the Cozen firm's participation. While it is axiomatic that an objection may be waived, in the case at bar, there is no allegation that the plaintiffs should have discovered at some earlier date that Strawbridge was employed by the Cozen firm. In addition, the Court has an independent obligation to supervise its officers. *Richardson v. Hamilton International Corp., supra.* Accordingly, the Court finds that the plaintiffs have not waived their objection to the Cozen firm's participation.

█ The Court begins its discussion by noting that the Code of Professional Responsibility of the American Bar Association ("Code") has been adopted by the United States District Court for the Eastern District of Pennsylvania[1] and by the Supreme Court of Pennsylvania[2] as the standard of conduct for all attorneys. In supervising all of its officers, the Court has a responsibility to maintain *public* confidence in the legal profession and, accordingly, may disqualify an attorney not only for actual improper conduct but also for failing to avoid even the appearance of impropriety. *Richardson v. Hamilton International Corp., supra*; Code of Professional Responsibility, Canon 9, EC9–1, EC9–2. In the case at bar, there is no allegation of actual improper or unethical conduct on the part of Strawbridge, the U.S. Attorney's Office or the Cozen firm. Indeed, the Court makes no such finding because there is no evidence of any kind that any attorney in this case has acted improperly or has not demonstrated concern with his professional obligations. Rather, the Court is primarily concerned with the public's confidence in, and perception of, the legal profession in general, as well as the judiciary and the criminal justice system, now that those two arms of the Government are and have for some time been involved in the case.

The pertinent provisions of the Code are found in Canon 9:

*Disciplinary Rule 9–101(B)*

> A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

This principle is echoed in the accompanying Ethical Consideration 9–3:

> After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to

---

**1.** *See* Rule 11 of the Local Rules of Civil Procedure.

**2.** The Supreme Court of Pennsylvania adopted the Code by Order on February 27, 1974.

accept employment would give the appearance of impropriety even if none exists.

The Court notes the Preliminary Statement to the Code makes it clear that, while the Ethical Considerations are "aspirational" in character, the Disciplinary Rules are "mandatory."

Several rationales have been advanced in support of DR 9–101(B) by the cases and authorities. First, it has been noted that when an attorney accepts employment in connection with a matter that he had substantial contact with in his previous capacity as a public employee, it could appear that any action taken as a public employee was taken in order to gain employment in the private sector. *Hilo Metals Co. v. Learner Co.*, 258 F.Supp. 23, 28–29 (D.Hawaii 1966).

Second, it has been noted that when an attorney conducts an investigation under color of authority, such authority may have a coercive effect on persons under investigation which, in turn, might cause them to divulge information that they might not otherwise disclose. *Id. See also* ABA Comm. on Professional Ethics, Opinions, No. 35 (hereinafter "Opinion No.").

Third, as a governmental attorney, a lawyer would have access to material, such as investigative reports and grand jury testimony, which he would not otherwise have access to and which are presumably not available to his adversary in the civil litigation.[3] *Handelman v. Weiss*, 368 F.Supp. 258, 263 (S.D.N.Y.1973); *Allied Realty of St. Paul, Inc. v. Exchange National Bank of Chicago*, 283 F.Supp. 464, 467 (D.Minn. 1968), *aff'd*, 408 F.2d 1099 (8th Cir.), *cert. denied, Abramson v. Exchange Nat. Bank of Chicago*, 396 U.S. 823, 90 S.Ct. 64, 24 L.Ed.2d 73 (1969). *See also* Opinion No. 135.

█ Most of the cases discussing the applicability of DR 9–101(B) have focused on the attorney's actions as a public employee and have attempted to establish the extent to which a former Government employee will be *presumed* to have had contact with a particular investigation. *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir. 1964); *Hilo Metals Co. v. Learner, supra*, 258 F.Supp., at 27; *United States v. Standard Oil Co.*, 136 F.Supp. 345, 353–366 (S.D. N.Y.1955). In the case before us, the Court finds that there is no dispute as to the extent to which Strawbridge was involved in the criminal investigation. Strawbridge was closely and substantially involved in the criminal investigation into the precise events which form the basis for this civil action. Furthermore, the same ultimate *issue* which forms the dispute here—the origin of the fire—formed the focal point of the criminal investigation. The question before the Court on this motion is whether the Cozen firm must be disqualified, in accordance with the letter and goals of DR 9–101(B), because of Strawbridge's *employment* by the firm. Examining the facts and authorities, the Court finds that the entire firm must be so disqualified.

Even if Strawbridge has no contact with this civil litigation, it could be said that whatever action he took as an Assistant United States Attorney was taken with an eye toward gaining employment with the Cozen firm. Strawbridge was aware of the Cozen firm's involvement in this serious matter. He was clearly in a position to develop evidence and make prosecutorial decisions which could have some bearing on the outcome of the civil case. While the Court does not find, or even suggest, that Strawbridge did act as a prosecutor in furtherance of his own interests as a future employee of the Cozen firm, the Court must decide this matter with a view toward maintaining the public's confidence in the legal profession. Thus, the Court must consider what it believes would be the view of the average layman—someone not familiar with the high professional standards maintained by the United States Attorney's Office, the Cozen firm or Strawbridge himself.

---

**3.** A fourth rationale has been advanced based on the fact that a lawyer who accepts employment in connection with a matter he worked on in his former public capacity could be said to have been paid twice for his work. *Handelman v. Weiss, supra*, 368 F.Supp., at 264.

The other rationales offered in support of DR 9–101(B) are primarily concerned with the use or potential use in the civil trial of information and material disclosed to the former governmental lawyer. While it is true that Strawbridge stated that he had not disclosed, and would not disclose, such information, the fact is he possesses such information and the Court is, once again, concerned with the maintenance of *public* confidence in the premises now and in the foreseeable future. The Court finds these representations as to the past and assurances as to the future to be fully credible and trustworthy, but it is reasonable to conclude that an average layman may not. This concern with the layman's view has been manifested in the principle of law that one partner will be irrebuttably presumed to have disclosed confidential information to other present partners. *W. E. Basset Co. v. H. C. Cook Co.*, 201 F.Supp. 821, 824 (D.Conn.1962); *See also Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 826–827 (2d Cir.), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1955). While this "imputation" principle has been applied primarily in the context of a purely private conflict of interest—*i. e.*, a partner in a firm subsequently represents a client with an interest opposing that of a client of the first firm—the Court finds that it is applicable under all the circumstances here. This principle is based on the expectation and anticipation that lawyers in a firm will share knowledge and information and on the realization that, to a great extent, clients retain an entire firm and not just individual lawyers. *See* Kaufman, The Former Government Attorney and the Canon of Professional Ethics, 70 Harv.L.Rev. 657, 660 (1957).

While it is true that Strawbridge is an associate in the Cozen firm and not a partner and that there are many important differences between an associate and a partner, the Court does not believe that the public would make such distinctions, particularly since the Cozen firm is not large (18 attorneys) and Strawbridge was hired as an experienced trial attorney, as opposed to being newly admitted to the bar.

In the context of a former Government attorney, courts have disqualified entire law firms when that former Government attorney is a member of that firm. *See Telos, Inc. v. Hawaiian Telephone Co.*, 397 F.Supp. 1314, 1318 (D.Hawaii 1975); *Handelman v. Weiss, supra*, 368 F.Supp., at 264. In these cases, while it is true that the former Government attorney was actively involved in the related civil cases, the Court expressly stated that the entire firms were disqualified.

The Court must emphasize, however, that it is not establishing a *per se* rule of disqualification. An overly rigid approach to disqualification in the context of former Government attorneys would restrict the Government's ability to attract non-career attorneys. Rather, each case must be *sui generis*, the decision resulting from an analysis of all the circumstances in light of the goals of the Code of Professional Responsibility and the role of the legal profession in our society. *See Armstrong v. McAlphin*, 606 F.2d 28 (2d Cir. 1979). The Court finds that, based upon all the circumstances of this case, the Cozen firm must be disqualified. An appropriate Order will be entered.