**EXCHANGE NATIONAL BANK OF CHICAGO, a national banking association, Plaintiff,**

v.

**Sidney P. ABRAMSON, Defendant.**

**No. 3–68 Civ. 24.**

United States District Court
D. Minnesota.
Third Division.
Feb. 1, 1968.

**850**

Best, Flanagan, Lewis, Simonet & Bellows, by Leonard Simonet and Harold Evarts, Minneapolis, Minn., D'Ancona, Pflaum, Wyatt & Riskind, by Edgar Bernhard, Chicago, Ill., Raskin, Downing & Dammann, by Robert J. Downing, Chicago, Ill., for plaintiff.

O'Connor, Collins & Abramson, by Theodore J. Collins, St. Paul, Minn., for defendant.

Briggs & Morgan, by David Forsberg and Sam Hanson, St. Paul, Minn., for Homer A. Bonhiver, the court appointed Receiver of American Allied Ins. Co.

## MEMORANDUM

NEVILLE, District Judge.

The above-entitled action has been filed with this court seeking to enjoin the defendant, now an attorney in private practice in Minnesota, from acting and serving as one of the attorneys for the court appointed Receiver of American Allied Insurance Co., now defunct. The action further seeks to restrain defendant's "agents, servants, employees and attorneys, and all persons in active concert or participation with him or who receive actual notice of the order [of this court] * * * " from instituting legal action against plaintiff and from in effect using documents or information known to or now or heretofore within the knowledge of defendant. The receiver has indicated his clear intention to sue the plaintiff, a Chicago banking institution, for some $10,500,000.00, alleging fraud on its part. More than two months ago the receiver furnished plaintiff with a draft complaint in the proposed action.

Before being retained as an attorney for the receiver, defendant, now 31 years of age, had been retained as a special United States District Attorney, succeeding his prior full-time employment as an assistant United States Attorney, to assist and act as "second chair" for the federal prosecutor in the trial of a criminal case brought by the United States against numerous defendants, including three former officers of plaintiff. Many, if not all, of the same issues which were involved in the abortive criminal trial will be in the fore in the prospective lawsuit to be brought against plaintiff by the receiver. Defendant was intimately associated on the government's side with the trial of the criminal case and sat through some 13 weeks of trial, now recorded in a typed transcript of approximately 17,000 pages. He became aware of, or certainly had access to, various FBI and postal inspectors' written and oral reports and had knowledge of, and available to him, the grand jury minutes and all grand jury and government exhibits. He assisted extensively in the trial preparation.

Prior to the institution of the criminal action by the federal government, a number of plaintiff's records were subpoenaed and submitted to or used before the indicting grand jury. Defendant, though then employed as an assistant United States Attorney, testified that he had little or nothing to do with the case at the grand jury stage. Many of the same documents, however, and perhaps others were actually used in the criminal trial.

Some several months after completion of the criminal trial resulting in not

guilty verdicts, the American Allied receiver requested defendant to associate himself as one of the counsel in the prospective suit against plaintiff above mentioned. The receiver did this for the reason, as set out in his petition to the District Court of Ramsey County, Minnesota, that:

> "The employment of Mr. Sidney P. Abramson as special counsel in these matters should, in the opinion of the petitioner, be generally advantageous to the receivership estate and should likewise result in substantial over-all saving of legal time and expense to the estate by virtue of the extensive knowledge and background Mr. Abramson now has in respect to matters particularly relating to the Exchange National Bank of Chicago as a result of his participation as Special Assistant to the United States Attorney in the criminal trials recently concluded at Bismarck, North Dakota, involving the trial of certain former officers of American Allied Insurance Company and Allied Realty of St. Paul, Inc."

Plaintiff claims defendant is guilty of a breach of Canon 36 of the American Bar Association's Canons of Ethics (heretofore adopted by the Minnesota Supreme Court) and so should be enjoined from acting as attorney for the receiver. Canon 36 provides as follows:

> "A lawyer should not accept employment as an advocate in any matter upon the merits of which he has previously acted in a judicial capacity.
>
> A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ."

Plaintiff asserts irreparable harm to itself if defendant be not enjoined and its other relief be denied.

 On this hearing for preliminary injunction, the court need not and does not determine the merits of the case. The court at this juncture inquires only whether immediate and irreparable harm will befall the plaintiff, Exchange National Bank, if injunctive relief against the filing of the lawsuit with defendant as counsel is not granted. Herein lies a weak link in plaintiff's present motion. In the court's view, there is no substantial evidence that, upon the filing of a lawsuit by the receiver, whether or not defendant acts as counsel, plaintiff will sustain "immediate and irreparable harm." The only harm plaintiff alleges is that which might flow from widespread publicity in Chicago and elsewhere when the suit is filed which, it states, "would undermine the confidence of plaintiff's depositors and customers."

The complaint in the case at bar asserts that the Exchange National Bank is the sixth largest National bank in the State of Illinois, that it has $245,000,000.00 in deposits, 40,000 accounts, and 230 correspondent banks, locally and internationally. That the filing of a lawsuit in the amount of $10,500,000 charging fraud might be an embarrassment to the bank no one can doubt; nor can anyone doubt that if any damage actually is sustained by the filing of the lawsuit, it would be most difficult to attempt to assess such and to make recovery in an action at law. Plaintiff's position, however, ignores the fact that:

(1) It was first furnished with a draft complaint of the proposed lawsuit more than two months ago, in November, 1967, in which defendant was designated as attorney for the receiver and in a period of two months or more it made no application for his removal to the Ramsey County District Court which approved the appointment and hiring of defendant;

(2) There are now on file at least two other lawsuits, one in Minnesota and apparently another—the subject of an offer of proof at the hearing—filed some time ago in Illinois, in at least the former of which plaintiff to a

greater or lesser extent is charged with fraud;

(3) The draft complaint is in fact now on file with this court, with all its allegation of fraud and misconduct, by virtue of plaintiff's own actions in filing it and so the same is now a public record and available to all;

(4) Even were this court to grant plaintiff the relief requested, it is a compelling inference from the evidence and the posture of matters presently that without too much delay, some other counsel would be employed by the receiver and in due course would commence an action with allegations similar to the draft complaint. The transcript of the criminal trial is available, and certainly discovery proceedings in a civil action under the Federal Rules of Civil Procedure would disclose substantially the same documentary evidence and facts as are now in the possession of defendant. Granting plaintiff's request would seem therefore not to remove the alleged injury and harm flowing from publicity, if such it be, but at best only to delay it. Any person in business, including a national bank, must bear with, and be subjected to the hazard of, adverse publicity that may arise on the filing of a lawsuit. Thousands are filed daily in the United States and "immediate and irreparable harm" does not necessarily or very often follow. This is true whether or not a particular plaintiff's attorney is extremely knowledgeable and sophisticated or completely inept. The result is the same publicity-wise and there is no, or at best a very slight, sequitur between the character or knowledge of counsel for a particular plaintiff and the amount of adverse publicity engendered. The removal or enjoining of defendant in this case does not cure or remove plaintiff's claimed cause for worry. Of course, to suppress or grant immunity to all evidence, knowledge and information which the receiver now has or ever acquired by and through defendant Abramson might render it impossible, if literally complied with, for the receiver to institute any action at all. The court is quite unwilling to accept this basis for the granting or a preliminary injunction without further serious consideration on a trial of the merits.

Quaere whether the filing of even a wholly groundless lawsuit with its attendant adverse publicity, absent proof of deliberate intent showing malicious prosecution on a plaintiff's part, gives rise to a cause of action at all. Courts are open to all litigants, to the press and to the public. The consequences thereof which is what plaintiff here claims to cause irreparable harm, are not alleviated by removal of a particular attorney who is representing a party plaintiff, nor it would seem materially lessened merely by delay.

For all of the reasons above, plaintiff's motion for a preliminary injunction is denied.