**EXCHANGE NATIONAL BANK OF CHICAGO, a national banking association, Plaintiff,**

v.

**Sidney P. ABRAMSON, Defendant**

**and**

**Homer A. Bonhiver, as Receiver of American Allied Insurance Co., Intervenor.**

**No. 3–68 Civ. 24.**

United States District Court
D. Minnesota,
Third Division.

Aug. 20, 1968.

Best, Flanagan, Lewis, Simonet & Bellows, by Leonard W. Simonet, Minneapolis, Minn., D'Ancona, Pflaum, Wyatt & Riskind, by Edgar Bernhard, Chicago, Ill., and Raskin, Downing & Dammann by Robert J. Downing, Chicago, Ill., for plaintiff.

Briggs & Morgan by David C. Forsberg, St. Paul, Minn., for intervenor.

NEVILLE, District Judge.

This case raises the interesting question as to whether an intervenor who has filed a counterclaim against the plaintiff prior to an involuntary dismissal of plaintiff's complaint is entitled to proceed thereafter on his counterclaim, which independently meets jurisdictional requirements, despite plaintiff's objection. Several collateral and subsidiary questions first must be answered to arrive at the conclusion reached by this court to the effect that the intervenor here has such a right and may proceed to trial on his counterclaim.

When this matter first came before this court, plaintiff Exchange National Bank of Chicago argued vehemently and at great length that the threatened filing of a suit in Chicago, Illinois for $10,-500,000.00 by the intervenor, the Receiver for American Allied Insurance Company, would cause it irreparable harm. See Exchange Nat. Bank of Chicago v. Abramson, 278 F.Supp. 849 (D. Minn.1968). Now that the intervenor has obliged and has filed his $10,500,000 suit in the District of Minnesota by way of a counterclaim, plaintiff is arguing just as vehemently and lengthily that such is an improper venue and the counterclaim legally will not lie. It now in effect urges that suit, if to be brought, should be venued in Chicago. The court cannot blame the plaintiff nor its counsel for not wanting to be sued, but it is obvious that sooner or later plaintiff is going to become a defendant and be required to answer in a suit. This court believes that the District of Minnesota is the proper forum and that the case should proceed here forthwith on the Receiver's counterclaim. A short review of the history of the case is necessary to an understanding of the court's ruling.

Plaintiff is a national banking institution with its principal place of business at Chicago, Illinois. Defendant Abramson is an attorney at law and a citizen of Minnesota. American Allied Insurance Company (Allied) is incorporated under Minnesota law and maintained its principal place of business therein. Its court appointed Receiver, Homer A. Bonhiver, also is a Minnesota citizen.

In 1965 a federal grand jury sitting in Minnesota returned indictments against some 14 or more individuals for alleged criminal activity involving the failure and ultimate insolvency of Allied. Three former employees of the plaintiff Bank were among those so indicted. Abramson, an attorney at law and a member of the Minnesota Bar, had been an Assistant United States Attorney when the indictments were returned, though he was not involved with the matter at that time. Subsequently, as a Special Assistant United States Attorney he aided and assisted the United States Attorney in prosecuting the criminal case. He sat through the entire lengthy trial held at Bismarck, North Dakota, culminating in verdicts of acquittal. The charges there were in the nature of criminal fraud and in part related to various transactions between the Exchange National Bank and Allied. Numerous lesser charges were also made. Abramson returned to the private practice of law in Minnesota upon completion of the criminal trial. His knowledge of the Allied-Exchange Bank transactions apparently motivated the Receiver to offer Abramson a position as co-counsel in winding up Allied's affairs. Thereafter, he was duly appointed as an attorney for the Receiver by the Ramsey County Court and

has since served as a co-counsel. Abramson proceeded to give legal advice regarding divers matters, one of which culminated in a proposed and so-called "draft complaint" venued in Federal District Court in Illinois naming the Receiver as plaintiff and the Exchange National Bank (plaintiff here) as defendant. This was submitted as a courtesy between counsel to advise of the nature of the action to be instituted and apparently as a part of preliminary settlement negotiations. The Receiver gave notice that suit would be commenced upon expiration of a given period of time. Prior to such date, however, and on January 25, 1968, the plaintiff Bank filed its complaint in the above action with this court in Minnesota naming Abramson as defendant attaching a copy of the "draft complaint" and seeking injunctive relief for an alleged continuing violation of Canon 36 of the American Bar Association Canons of Professional Ethics. The complaint sought relief enjoining Abramson:

"his agents, servants, employees and attorneys, and all persons in active concert or participation with him or with them who receive actual notice of the order * * *"

from (1) "filing in the United States District Court in Chicago or elsewhere the draft complaint * * * or any other complaint involving any of the same matters alleged in said draft complaint and prepared by or with the assistance (whether direct or indirect) of Defendant;"

(2) "using in any manner adverse to Plaintiff, or disclosing or transmitting to any other person or persons for such use, any and all documents, correspondence, Grand Jury minutes, evidence, knowledge, information or background material learned about, ex-amined or obtained by Defendant * * *"

and (3) "further participation as or with counsel or co-counsel for Homer A. Bonhiver as Receiver * * * and whether such participation be in the form of attendance at meetings, appearances in Court, advice or assistance (whether direct or indirect) to counsel or co-counsel of record, or otherwise."

Abramson duly answered, opposing the action and counterclaims for damages for abuse of process. This counterclaim is not now before this court.

Plaintiff's motion for a temporary injunction was heard on January 27, 1968. Allied, by and through its Receiver, appeared at this hearing and requested leave to participate in the proceedings as an intervenor. Such leave was conditionally granted with the plaintiff reserving its objection until subsequent production and review of the intervenor's proposed answer and counterclaim. Intervenor served the same upon the plaintiff on January 31, 1968. The counterclaim therein sought declaratory relief against the plaintiff to the effect that Abramson was properly employed and was not in contravention of Canon 36. Without objection of plaintiff, the Receiver was allowed to intervene as a matter of right pursuant to Rule 24(a), Fed. R.Civ.P., by an order of this court dated January 31, 1968.

By order filed February 5, 1968, this court denied plaintiff's motion for a temporary injunction. The intervenor, Allied, on February 5, 1968 filed an "Amended Answer and Counterclaims," restating in substance the prior answer and counterclaim, but additionally alleging a counterclaim against the plaintiff seeking recovery of $10,500,000.00 damages. This counterclaim is substantially identical to the so-called "draft complaint" annexed as Exhibit D to the plaintiff's complaint in this action against

Abramson. This counterclaim was stated not to have been submitted to plaintiff's counsel or the court with the original proposed answer and counterclaim because of a stipulation between counsel prohibiting such filing before the expiration of an agreed time lapse. Like the "draft complaint", the counterclaim alleges rights to recover damages for losses occurring in the Allied-Exchange Bank transactions which formed the basis of many charges underlying the criminal trial at Bismarck.

Plaintiff filed an appeal and an aplication for stay and injunction pending appeal from the order of this court filed January 5th and denying temporary injunctive relief. See Exchange Nat. Bank of Chicago v. Abramson, 278 F.Supp. 849 (D.Minn.1968). By order dated February 15, 1968, after oral argument, the Eighth Circuit Court of Appeals denied the application for stay and injunction pending appeal and remanded the cause to this court "with directions to dismiss the complaint for lack of [subject matter] jurisdiction" in that it was not shown that the amount in controversy, exclusive of interest and costs, exceeded $10,000.00. In a companion case, where it does not seem there can be any doubt as to jurisdiction, this court disqualified Abramson for a violation of Canon 36. Allied Realty Co. of St. Paul, Inc. v. Exchange Nat. Bank of Chicago, 283 F. Supp. 464 (D.Minn.1968).

The motions now before the court are by defendant to strike and expunge intervenor's $10,500,000.00 counterclaim and by intervenor requesting a determination that said counterclaim is properly filed or if not, that leave therefor be granted.

The parties dispute several legal questions. First, whether plaintiff has waived its ability now to be able to object to the intervention "as a matter of right?" Second, whether if there be no waiver the Receiver is not entitled to intervene "as a matter of right" in any event? Third, whether an intervenor has a right under Rule 24 to counterclaim against the original plaintiff? Fourth, whether the plaintiff waived the venue privilege accorded national banking concerns by 12 U.S.C. § 94 (1964)? Fifth and last, whether a dismissal of the plaintiff's complaint on appeal for a jurisdictional defect affects an intervenor's previously filed counterclaim so as to require its dismissal?

### FIRST

Initially the question raised by the foregoing facts is whether the plaintiff Bank waived its right to object to the intervention of the Receiver as a matter of right under Rule 24(a) (as distinguished from permissible intervention under Rule 24(b)) by not appearing in opposition to the motion for leave to intervene. The motion to intervene which requested "leave to intervene as a matter of right" was served on and exhibited to plaintiff. Plaintiff alleges however it did not see the order allowing intervention prior to its entry (see plaintiff's moving papers of February 19, 1968). It is true that this motion did not have attached to it the $10,500,000.00 counterclaim but only a pleading relating to Abramson's services as attorney. Inasmuch as the Receiver complied with Rule 24(c) which requires that "The motion shall state the grounds therefor * *" it becomes difficult to accede to the plaintiff's contention seeking another opportunity to challenge intervention as a matter of right. The Receiver's basis for intervention as a matter of right was set out in the moving papers showing him to have an "interest" which the disposition of the action might "impair or impede." The subsequent amendment including the additional counterclaim did not add any information going to this criteria as set forth in Rule 24(a). It is noted that plaintiff made no objection to the motion to intervene. It may well be that plaintiff would have objected had it known the intended scope of the Receiver's intervention, but such fact, if true, does not relate to the question of whether the

Receiver is entitled to intervene "as a matter of right." In the court's judgment, plaintiff has waived its right to object to the Receiver's motion for leave to intervene as a matter of right. Plaintiff had all information pertaining to the right to intervene before it when the Receiver duly made its motion. It failed to oppose said motion. It can not now return to argue a right neglected the first time. Thus, the Receiver is an intervenor of right pursuant to Rule 24(a).

## SECOND

■ Assuming *arguendo,* however, that the Bank's right to object was not waived by failure timely to assert it, cf. Salem Engineering Co. v. National Supply Co., 75 F.Supp. 993 (W.D.Pa.1948); E. G. Staude Mfg. Co. v. Berles Carton Co., 31 F.Supp. 178 (E.D.N.Y.1939), the Receiver appears to qualify for intervention as a matter of right under Rule 24 (a) in any event.[1] This rule sets forth three criteria prerequisite to the right to intervene as a matter of right: first, the applicant must claim " * * * an interest relating to the property or transaction which is the subject of the action; * * * " second, the applicant must be " * * * so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; * * * " and third, the applicant's interest must be inadequately represented by the existing parties. Each of the above elements justifying intervention must be fulfilled. In the matter at hand, they are satisfied.

Plaintiff's action against Abramson sought sundry relief. It sought to enjoin Abramson, " * * * his agents, servants, employees and attorneys and all persons in active concert or participation with him * * * " from filing the "draft complaint," using or disclosing various documents and information, and several lesser items of relief. Not only did the Receiver have a substantial interest in any possible injunctive relief by virtue of being the plaintiff in the "draft complaint," but in addition, he certainly had a large interest in the ethical charges against his counsel of record as well as an interest in having the counsel of his choice. Since the language of the complaint arguably encompasses the Receiver as one against whom the injunction would run, it is inconceivable that the Receiver can be said to have no interest. Moreover, in the Advisory Committee's Note to Rule 24, amended in 1966, it is noted that a party, albeit a tentative class member, should not need to risk collateral attack to escape the effect of a judgment which might run against him, but rather should be permitted to intervene. 28 U.S.C.A., Fed.R.Civ.P. 24 (Supp. 1967). Hence, here, where the Receiver might be barred from instituting the lawsuit under the injunction sought against its counsel, the intervention should be granted. The same reasons indicate that the second factor of Rule 24 (a) is fulfilled. An injunction against Abramson from participating in the action would preclude the Receiver from retaining Abramson as co-counsel in the action planned against the Bank. Surely this constitutes a situation where the disposition could severely affect his interests and "impair or impede" his protection thereof.

Thus the final question remaining is whether or not the Receiver's interest was adequately protected by Abramson. There is some doubt as to the correct standard applicable in determining adequacy of representation. Compare Stadin v. Union Elec. Co., 309 F.2d 912 (8th

---

1. Rule 24(a) reads:
    "Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Cir. 1962), cert. denied 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963), and Peterson v. United States, 41 F.R.D. 131 (D.Minn.1966), with Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960). See generally Annot., 84 A.L.R.2d 1412 (1962). This is particularly true since Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), where the court apparently liberalized the previous standard in favor of intervention when the interests of the existing parties and the intervening applicant differ. Conceding that Abramson had substantial interest in the controversy because of potential legal fees [2] for his representation, and that Abramson and the Receiver both sought to maintain the existing attorney-client relationship, nevertheless, the Receiver's interest in so preserving the status quo appears to differ significantly from Abramson's, and hence Abramson's representation might not adequately represent the applicant's interests. The Receiver would necessarily be far more interested in preserving his own right to bring the action against the Bank, and accordingly would better protect himself from a broad injunction which might go further than enjoining only Abramson from participating. The inadequacy of representation need not be shown to a certainty. Kozak v. Wells, supra. Indeed, the burden under amended Rule 24(a) may well be on the party objecting to intervention. See Moore, Federal Practice ¶ 24.08 (Supp. 1967). Such burden the Bank has not sustained. In light of the interests of Abramson and the Receiver, combined with the general liberal nature of amended Rule 24(a), the Receiver is entitled to intervene as a matter of right. This is true irrespective of whether the Bank can be held to have waived its objection to intervention originally.

## THIRD

Since in this court's view the Receiver is entitled to intervene in this action as a matter of right, the next question concerns the scope of participation of such an intervenor. Specifically, the question relates to whether an intervenor can assert affirmatively a counterclaim for relief against the original plaintiff, and, if so, the nature of the counterclaim which can be so asserted. At the outset it is to be noted that the authorities are in disagreement as to the proper treatment to be accorded counterclaims asserted by an intervenor. Many authoritative commentators on federal procedure state that an intervenor of right can file any counterclaim then available, either compulsory or permissive under Rule 13, see 4 Moore, Federal Practice ¶ 24.17, at 135 (1967 ed.); 2 Barron & Holtzoff, Federal Practice & Procedure § 603.1 (Wright ed. 1961); Wright, Federal Courts § 75 (1963). Others have concluded that even intervention of right can be subordinated to the main action and that unduly broad or unrelated counterclaims need not be permitted, see Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L. Rev. 721, 754–55 (1968).

The objection to permitting an intervenor leave to file any counterclaim regardless of its relation to the case is based upon the unfairness to the plaintiff who suddenly may find himself confronted with substantial exposure to a litigant he never sued. Moreover, the counterclaim may result in substantially increased litigation than in the first instance. These arguments, however, presuppose a surprised plaintiff. When intervention of right is

---

**2.** The order of the Ramsey County District Court dated November 21, 1967 appointing Abramson as co-counsel for the Receiver established his compensation in an amount up to $12,000 and provided application could be made to the court for additional payments.

granted pursuant to Rule 24(a), it becomes exceptionally difficult to say that the plaintiff should not be bound to respond to any counterclaim asserted, for the plaintiff presumably knew or should have known that an interested party would enter the lawsuit by the vehicle of Rule 24(a), or, in fact, would need to be brought into the lawsuit under Rule 19(a) if such were raised. Since the plaintiff should have contemplated that the Receiver might well intervene as of right under Rule 24(a) or be joined under Rule 19(a) (2) (i), plus the fact that Rule 13 does not distinguish between intervenors and other pleaders in speaking to counterclaim obligations and rights, the result best accommodating the language of the Rule and fairness to the parties permits the Receiver's counterclaim to stand. This accords with the literal language of Rule 13 and comports with the interpretation given Rule 24 and Rule 13 by the leading authorities in the area. Rules of procedure should not be used to immunize plaintiffs from counterclaims, either permissive or compulsory, but rather should attempt to encourage litigation of all claims existing between the participants to a lawsuit, especially when no prejudice results to the parties. Since the Receiver at bar intervened as a party of right, the counterclaim asserted against the Bank may stand. The propriety of this result is consistent with most modern cases discussing the problem of scope of intervention. See, e. g., Stewart-Warner Corp. v. Westinghouse Elec. Corp., 325 F.2d 822 (2d Cir. 1963), cert. denied, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964); United States v. Martin, 267 F.2d 764 (10th Cir. 1959); Lenz v. Wagner, 240 F.2d 666 (5th Cir. 1957); Switzer Bros. Inc. v. Locklin, 207 F.2d 483 (7th Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954); People of State of California v. United States, 180 F.2d 596 (9th Cir. 1950). Since the Receiver's counterclaim is at least a permissive conterclaim under Rule 13(b), which is conceded by the plaintiff, this court must permit its filing when intervention is of right.

Even if the plaintiff were correct in its contention that an intervenor cannot assert any type of counterclaim against an opposing party, it is clear that an intervenor is permitted to assert a "related" counterclaim. Stewart-Warner Corp. v. Westinghouse Elec. Corp., supra; United States v. Martin, supra; Lenz v. Wagner, supra; Switzer Bros., Inc. v. Locklin, supra. Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39 (1935) and its progeny, principally relied upon by the plaintiff, are inapposite to the Receiver's counterclaim which clearly in this court's opinion is related to the main action. The counterclaim thus may stand even assuming that *Brandtjen*, which was decided prior to promulgation of the Federal Rules of Civil Procedure, is still good law. Cf. Switzer Bros., Inc. v. Locklin, 207 F.2d 483 (7th Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954).

That the counterclaim is related to the main action against Abramson is illustrated by the fact that plaintiff appended a copy of the "draft complaint" to its, complaint against Abramson in this action. Surely a suit to enjoin the filing of a complaint, suppression of certain documents and participation by an attorney is related legally and logically to the proposed complaint itself. While the underlying theory expressed in the counterclaim by the Receiver sounds in fraud in numerous transactions, and so does not rely upon the facts or legal theories pressed in the suit against the defendant herein, nevertheless, the counterclaim is related significantly in that the purpose of the suit against Abramson sought to enjoin the filing of the very counterclaim (then in the form of a "draft complaint"). Such relationship, admittedly

somewhat unique because of the nature of the suit against Abramson, satisfies the "related" doctrine espoused in the above cases.

■ Plaintiff further contends that under Rule 13(f), the court may pass upon the propriety of the counterclaim since it was not filed at the time of the motion papers for leave to intervene. The intervenor, on the other hand, argues that he was entitled to amend as of right under Rule 15. Since Rule 13(f) speaks specifically to the problem of "omitted counterclaims", while Rule 15 is general with regard to amendments, the former controls. 3 Moore, Federal Practice ¶ 13.33 (1961 ed.). In any event, under Rule 13(f), the counterclaim is permitted, since there is absolutely no showing of inexcusable delay, neglect or lack of good faith in asserting the claim. The claim was unavailable to the intervenor originally by virtue of the stipulation between counsel. It was asserted forthwith when the time period specified in that agreement terminated.

## FOURTH

■ Having determined that the counterclaim filed by the Receiver is appropriate under Rule 24 and Rule 13, there arises the question earnestly argued by the plaintiff Bank whether 12 U.S.C. § 94 (1964), the general venue provision for national banks, prohibits the Receiver from asserting the counterclaim. This problem is best analyzed in two parts: first, whether or not venue would be waived on the counterclaim if it had been asserted by an original party defendant named by the Bank; and second, if so, whether the result is altered because the counterclaimant is an intervenor of right under Rule 24(a).

12 U.S.C. § 94[3] provides in full as follows:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

It is well established that the section creates a personal privilege for national banks, and that the privilege may be effectively waived by conduct or consent to suit in an otherwise improper forum. Michigan Nat. Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed. 2d 961 (1963) (per curiam); Buffum v. Chase Nat. Bank, 192 F.2d 58 (7th Cir. 1951), cert. denied, 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952); First National Bank v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889). The narrow question here is whether the plaintiff Bank, by bringing its action in this court to enjoin Abramson, waived its privilege to be sued only where located for venue purposes. Both parties agree that but for waiver of such privilege, the plaintiff Bank is established and located in Illinois for purposes of 12 U.S.C. § 94, and that an original proceedings in this court against the Bank could not be maintained.

■■ The court holds the plaintiff waived its right to object to improper venue by commencing in this district an action to enjoin Abramson from various acts of participation in the action styled "draft complaint." Under the rule announced in General Elec. Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932), a plaintiff waives venue privileges with respect to any counterclaim, either per-

---

3. For a thorough analysis of this provision, see Note, An Assault on the Venue Sanctuary of National Banks, 34 Geo. Wash.L.Rev. 763 (1966) and Annot., 1 A.L.R.3d 904 (1965). Waiver of venue privileges in general is covered in Annot., 5 L.Ed.2d 1065.

missive or compulsory, when he commences an action in a forum where venue otherwise would not lie. Although plaintiff points out that the *General Elec. Co.* case arose under another venue statute relating to proper forums for actions involving certain patent litigation, plaintiff fails to cite any authority for the proposition that venue under the national banking venue provision is not waived by similar acts. Thus, under the aforesaid case, plaintiff waived its 12 U.S.C. § 94 privilege with regard to any counterclaim that might have been filed by Abramson, the original defendant.

■ Of course a finding of waiver with respect to the original named defendant does not necessarily indicate waiver as to an intervenor. See Brandtjen & Kluge, Inc. v. Joseph Freeman, Inc., 75 F.2d 472 (2d Cir. 1935), aff'd on other grounds sub nom. Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39 (1935). In *Brandtjen & Kluge, Inc.*, Judge Learned Hand held that by commencing an action the plaintiff had not waived its venue privileges against an intervenor counterclaiming for affirmative relief. However, the Judge did note that in some instances, a finding of waiver would be appropriate, for example, when the plaintiff should have such knowledge of probable intervention that he could anticipate a counterclaim from the intervenor. That thought was followed in Stewart-Warner Corp. v. Westinghouse Elec. Corp., 325 F.2d 822 (2d Cir. 1963), cert. denied 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964), where the Second Circuit Court of Appeals held that the plaintiff had waived its venue privileges to suit in a different forum. There the court stated the venue conclusion as follows:

"Stewart-Warner having chosen to bring the suit in the Western District of New York, we can see no objection to having all these matters passed upon by that court. The suit was in essence brought against Canadian as well as against Westinghouse and surely it was brought with full knowledge on Stewart-Warner's part that Canadian would probably intervene. Thus Stewart-Warner has waived the objection to venue which it advanced as a second ground in support of its motion and which it otherwise would have by reason of its not doing business in the Western District and so far as the record shows not having committed acts of infringement therein. Of course, the district court may deny an intervenor the opportunity to raise permissive counterclaims wholly unrelated to the litigation between the plaintiff and the original defendant. But where, as here, because of the interrelationship of the plaintiff's and the intervenor's claims the interposition of counterclaims may properly be permitted no real prejudice can result to the plaintiff from the denial of his objection to venue. See 3 Moore, Federal Practice 45."

325 F.2d at 827–828. This view comports fully with the view taken by Professor Moore in Moore, Federal Practice ¶ 13.16, at 45 (1961 ed.). Inasmuch as the plaintiff could adequately foresee that an intervenor might well seek to file his counterclaims upon intervening in the litigation, it is difficult to distinguish the venue problem when a named defendant counterclaims. Moreover, as was shown above, the counterclaim asserted by the Receiver was related to the suit brought by the Bank to enjoin Abramson. Surely the plaintiff must have supposed the Receiver might attempt to intervene. Even more likely, the plaintiff must have considered the possibility of the filing of the counterclaim in its suit against Abramson and in fact attached to the plaintiff's complaint in the form of a "draft complaint" as an exhibit thereto and which plaintiff contended originally would do it irreparable harm if filed in Chicago. While it is true that the Bank did not

specifically choose the Receiver as an antagonist in this action, it should have anticipated the intervention and assertion of rights against the Bank in the action by the vehicle of counterclaim. It is not unjust to find that the Bank risked subjection to a counterclaim in the nature of the "draft complaint" it sought to enjoin from filing. The *Stewart-Warner* result thus appears more fit for the facts of this case than the result reached by Judge Hand in the *Brandtjen* case. Accordingly, it is held that the Bank waived its 12 U.S.C. § 94 privilege with regard to the counterclaim asserted by the Receiver herein.

### FIFTH

The final question presented is whether the dismissal of the original action by the Court of Appeals for lack of jurisdictional amount in controversy renders this court without jurisdiction to hear the counterclaim asserted by the Receiver. The court answers this question in the negative. In Switzer Bros., Inc. v. Chicago Cardboard Co., 252 F.2d 407 (7th Cir. 1958) the Court of Appeals held that the District Court did have jurisdiction to entertain an intervenor's later-filed antitrust counterclaim, because such was supported by an independent ground of federal jurisdiction (i. e., 15 U.S.C. § 15). As noted by the court, 252 F.2d at 410:

> "It appears to be settled that where a counterclaim states a cause of action seeking affirmative relief independent of that stated in the complaint, the dismissal of the complaint does not preclude a trial and determination of the issues presented by the counterclaim. [citing cases]"

See also, Magdoff v. Saphin Television & Appliance, Inc., 228 F.2d 214 (5th Cir. 1955) (per curiam) where it was held that an intervenor who presented an independent counterclaim against the original plaintiff may maintain that counterclaim even though the original action between plaintiff and defendant has been dismissed. Plaintiff relies on three cases which involve not counterclaims but motions to intervene: Robertson v. Gallion, 282 F.Supp. 157 (M.D. Ala.1968); Davis v. Jury Commission of Montgomery County, 261 F.Supp. 591 (M.D.Ala.1966); and Mattice v. Meyer, 353 F.2d 316 (8th Cir. 1965). A reading of these cases indicates that the motions to intervene in each instance alleged substantially the same facts and request for relief as did the original complaint, and therefore, the dismissal of the original complaint resulted also in dismissal of the interventions because of a lack of an independent jurisdictional ground.

A separate order has been entered in accordance with this opinion.

Contemporaneously with the argument of the hereinabove discussed motions, there was submitted and argued a motion in a similar case of Homer A. Bonhiver, etc. v. Exchange Nat. Bank of Chicago, 3–68 Civ. 95, filed March 27, 1968. American Allied, through its Receiver, commenced this latter action by personal service of the summons and complaint upon the defendant (plaintiff here) pursuant to 32 Minn.Stat. § 543.19 (Supp. 1967). The action, brought in the Ramsey County District Court of Minnesota, was duly removed by defendant to this court under 28 U.S.C. § 1441 (a). Defendant (plaintiff here) now moves the court for an order quashing service of process and dismissing the plaintiff's complaint. As grounds therefor, defendant contends that (1) the above-mentioned "long-arm statute" cannot be "retroactively" applied under Minnesota law, and (2) irrespective of the validity of service, 12 U.S.C. § 94, the applicable venue statute for national banks, permits this suit against the Bank only in Illinois where it is established and located for venue purposes.

The complaint in this latter action is a repetition of the "draft complaint" and of the intervenor's $10,500,000.00 counterclaim discussed above. In view

of the decision above holding that the Receiver will be entitled to proceed on his counterclaim, a decision of the question in this latter case is unnecessary and moot, though it would appear that the Bank's position on venue under 12 U.S.C. § 94 is better founded where a completely separate action is brought than where a counterclaim is asserted in a pending action which the Bank itself has brought in this court. In any event, preserving both actions serves no useful purpose and a separate order has been entered dismissing Homer A. Bonhiver v. Exchange Nat. Bank of Chicago, 3–68 Civ. 95, in which order reference is made to this opinion and to the order entered in 3–68 Civ. 24 pursuant hereto.