EXCHANGE NATIONAL BANK OF CHI-
CAGO, a national banking associa-
tion, Plaintiff,

v.

Sidney P. ABRAMSON, Defendant,

and

Homer A. Bonhiver, as Receiver of Amer-
ican Allied Insurance Company,
Intervenor.

No. 3–68 Civ. 24.

D. Minnesota,

United States District Court
Third Division.

Jan. 24, 1969.

Best, Flanagan, Lewis, Simonet & Bellows, by Harold C. Evarts, Minneapolis, Minn., and D'Ancona, Pflaum, Wyatt & Riskind, by Edgar Bernhard, Chicago, Ill., for plaintiff.

No formal appearance by defendant but he and his counsel were present during a portion of the proceedings.

Briggs & Morgan, by Frank Hammond and David C. Forsberg, St. Paul, Minn., for intervenor.

NEVILLE, District Judge.

This cause again is before the court, this time on plaintiff's petition for an order barring intervenor from prosecuting this litigation. Exchange National Bank of Chicago seeks to disqualify as a party to this suit the intervenor, Homer Bonhiver, who is the State court appointed receiver of the insolvent American Allied Insurance Company, on the grounds that he has violated an Executive Order of the President and several criminal statutes relating to conflict of interest affecting employees of the Federal government. The Bank contends that Bonhiver should not be entitled to appear as intervenor (in effect a party plaintiff in this litigation) and, in addition, urges that all information pertaining to this litigation which he obtained in the course of his federal governmental employment should be suppressed for the purposes of this civil suit in which intervenor is seeking recovery of $10,500,000 from the Bank for alleged fraudulent and conspiratorial conduct.

Some background is necessary for a resolution of this issue.[1] Bonhiver, intervenor herein, was appointed receiver of the defunct American Allied Insurance Company on August 4, 1965 by order of the Ramsey County, Minnesota, District Court. No issue is made as to the jurisdiction or power of the State court to take such action. By further order of that court dated August 16, 1965, the receiver was empowered, authorized and directed to sequester all assets of the Company, institute and prosecute actions for recovery of assets and pursue all causes of action the receiver deemed necessary.[2] Ultimately Bonhiver was specifically authorized by State court order to institute and prosecute the suit now at bar.[3]

After intervenor had been appointed receiver, the United States Government began a criminal prosecution against a number of defendants growing out of the activities of the previous owners and officers of the American Allied Insurance Company. In connection therewith, Bonhiver entered into an agreement with the Justice Department to appear as a fact witness at the trial and also as an advisor to the prosecution for a fee of $60 per diem. Pursuant to such agreement, Bonhiver worked and was paid for ninety days' service between February 7 and June 20, 1967. He testified at the criminal trial for two days and apparently served as advisor for the remainder of the time. It is uncontested

that he had access to government files not generally available to the public, though he claims that none of his testimony related to the Bank.

In general, the Bank claims that it will be prejudiced if Bonhiver is permitted to make use in any way of any of the information he may have garnered from the secret government files which relate to dealings between it and American Allied Insurance Company. Thus the Bank seeks not only his disqualification, but suppression as well of any such information.

Certain additional facts were produced at the hearing on this motion and by affidavit. First, it is clear that Bonhiver made known his position as receiver to the United States District Attorney for the State of Minnesota who prosecuted the criminal case and to the Department of Justice prior to his being hired. Second, Bonhiver appears in the litigation at bar solely in a representative capacity as receiver and not seeking a recovery for his personal gain.[4] Any recovery will be for the benefit of creditors of the receivership.

The Bank alleges that Bonhiver has violated 18 U.S.C. § 209(a) which prohibits government officers or employees from receiving compensation for their work from any private source. This statute, it seems to the court, is designed to prohibit outsiders from supplementing a government employee's

1. For further background, see Exchange National Bank of Chicago v. Abramson, 278 F.Supp. 849 (D.Minn.1968); Allied Realty of St. Paul v. Exchange National Bank of Chicago, 283 F.Supp. 464 (D. Minn.1968); Exchange National Bank of Chicago v. Abramson, 45 F.R.D. 97 (D.Minn.1968). Various aspects of this litigation are now on appeal.

2. See Order of 8/16/65 by Albin S. Pearson, District Judge, Ramsey County, Minnesota.

3. See Order of Ramsey County District Court dated February 14, 1968. The Bank claims that only the right of Bonhiver himself to be involved in this litigation is involved, not the power or authority of the receivership itself to sue.

4. The Bank claims that an indirect personal benefit to Bonhiver is that his ultimate fee as receiver to some extent will be measured by the size of the estate that he is able to marshall. The Bank expressly denies any interest in preventing him from marshalling other assets for the benefit of the estate. There has of course been no showing nor could there be at this stage that Bonhiver's fee will in fact be affected or increased by any amount recovered in this suit. Bonhiver has been allowed as a fee to date by the State court a regular monthly stipend from the receivership. It was stated by intervenor's counsel, however, that the suit at bar and other claims against the Bank are the principal if not virtually the only assets of the receivership.

salary. The evils of such, were it permitted, are obvious. However, the statute quite clearly has no application to the situation at bar. Plaintiff's argument ignores subsection (c) of the statute which specifically excludes from the prohibition of subsection (a) among others, any "special employee" of the government. 18 U.S.C. § 202(a) defines a "special government employee" as:

> "* * * an officer or employee of the executive or legislative branch of the United States Government, of any independent agency of the United States or of the District of Columbia, who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duty either on a full-time or intermittent basis, or a part-time United States Commissioner."

Bonhiver's affidavit clearly shows that he worked as a fact witness and technical advisor for only ninety days and thus he is within this exception. The Bank has presented no evidence to the contrary. The fact that the time between Bonhiver's first and last day of service according to the calendar exceeded or equalled 130 days is immaterial in view of the fact he was paid but for 90 days of actual service. Clearly he was "employed" less than 130 days.

The above exclusion was part of Public Law 87–849, 76 Stat. 1119 (1962). According to a memorandum issued by the then Attorney General Robert F. Kennedy on January 28, 1963 (28 Federal Register 985 2/1/63):

> "One of the main purposes of the new legislation merits specific mention. That purpose is to help the Government obtain the temporary or intermittent services of persons with special knowledge and skills whose principal employment is outside the Government. For the most part the conflict of interest statutes superseded by Public Law 87–849 imposed the

same restraints on a person serving the Government temporarily or intermittently as on a full-time employee, and those statutes often had an unnecessarily severe impact on the former. As a result, they impeded the departments and agencies in the recruitment of experts for important work. Public Law 87–849 meets this difficulty by imposing a lesser array of prohibitions on temporary and intermittent employees than on regular employees. I believe that a widespread appreciation of this aspect of the new law will lead to a significant expansion of the pool of talent on which the departments and agencies can draw for their special needs."

Further in considering the present law, the Senate Report stated:

> "In considering the application of present law in relation to the Government's utilization of temporary or intermittent consultants and advisers, it must be emphasized that most of the existing conflict-of-interest statutes were enacted in the 19th century— that is, at a time when persons outside the Government rarely served it in this way. The laws were therefore directed at activities of regular Government employees, and their present impact on the occasionally needed experts—those whose main work is performed outside the Government—is unduly severe. This harsh impact constitutes an appreciable deterrent to the Government's obtaining needed part-time services." S.Rep. 2213, 87th Cong., 2d Sess. p. 6, U.S.Code Cong. & Admin.News 1962, p. 3854.

This court has no desire to recreate unnecessarily a deterrent to the Government's obtaining needed part-time services.

■ The purpose of the exception above was to permit the government to hire from the ranks of trained private enterprise talent pools those who could be of aid to specific government projects or agencies for a short duration and who were willing so to serve. Bonhiver falls

within that category since his services were used only for the criminal litigation.

Also without merit, since Bonhiver was an employee only for 90 days, is the Bank's contention that because Bonhiver was "on call" to the government from January 5 through June 20, 1967, such should be used to compute the period of time and that since such is in excess of 130 days, Bonhiver should not qualify for the exception.

The Bank also claims that the receiver violated 18 U.S.C. § 208(a) (1969 Supp.) in serving both as a government employee and as receiver. This section provides:

"Except as permitted by subsection (b) hereof, whoever, being an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or of the District of Columbia, including a special Government employee, *participates* personally and substantially as a Government officer or employee, *through* decision, approval, disapproval, recommendation, *the rendering of advice*, investigation, or otherwise, *in a* judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular *matter in which,* to his knowledge, he, his spouse, minor child, partner, *organization in which he is serving* as officer, director, trustee, partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, *has a financial interest*—

Shall be fined not more than $10,000, or imprisoned not more than two years, or both." [Emphasis added]

■■ This statute is not applicable to the present case. It has been held by the Supreme Court that the purpose of this type of statute is "to insure honesty in the Government's business dealings by preventing federal agents who have interests adverse to those of the Government from advancing their own interests at the expense of the public welfare." United States v. Mississippi Valley Generating Co., 364 U.S. 520, 548, 81 S.Ct. 294, 308, 5 L.Ed.2d 268 (1960). The Bank would seem not within the class designed to be protected by the conflict of interest statutes.

■ Further, there is no showing that the advice given the government was colored, or poor, or detrimental to it because of any supposed private financial interest of Bonhiver. Assuming arguendo, however, that the Bank has standing in this suit under the above criminal statute, the court is of the opinion that Bonhiver's conduct did not violate either the letter or the spirit of this statute. The statute was intended to prohibit and does by its words prohibit a government employee from having any present or prospective financial interest in government decisions in which he participates. Thus one may not have a personal financial interest in the outcome of advice that he gives as a federal employee. Here Bonhiver had no financial interest in either the particular advice that he gave the prosecution or in the outcome of the criminal trial itself. The mere fact that by participating in the prosecution he acquired, if he did, information which may now be used by the receivership was not intended to be and is not covered by this section. The statute by its terms, encompasses one who "* * * participates * * * through * * * the rendering of advice * * * in a * * * matter in which * * * [an] organization in which he is serving * * * has a financial interest." The Bank was not a defendant in the criminal case, though some of its former officers were so named but never tried. A verdict of not guilty was returned as to those who were tried and thereafter the government dismissed the criminal charges as to the remaining defendants, including the former employees of the Bank.

Neither Bonhiver nor the receivership had any financial interest in the out-

come of the criminal proceedings. True, had certain defendants been convicted, they could be impeached by being asked whether they had been convicted of a criminal offense if they were to be called as witnesses in the case at bar. This is a long way, however, from ascribing a financial interest to Bonhiver and is not sufficient to hold him disqualified because of Section 208 above.

■ The Bank next alleges that Bonhiver is in violation of Executive Order No. 11222, Section 201(c) (1), promulgated May 5, 1965, 30 Federal Register 6469. Since Bonhiver must be considered a "special government employee", it is clear that only Part III thereof is involved. In evaluating these sections the court concludes that since they are "standards of ethical conduct", they exist for the benefit of the government. Indeed the Executive Order was promulgated by the President by virtue of the authority vested in him as chief of the executive branch of the federal government. Such rules are not binding upon a State court in its choice of a receiver nor applicable in this civil suit in this court between private parties. Since the government is not here seeking disqualification on the grounds of its violation, the force and effect of this Executive Order is here not material.

■ The Bank's final ground for urging disqualification of Bonhiver is that any use by him of information, data, etc., in this lawsuit which was acquired while in the employ of the Justice Department would be in violation of 18 U.S.C. § 1905 and Section 205 and Part III of Executive Order No. 11222. In reality, this contention is disposed of by what already has been said above. In addition, however, the Bank has offered no evidence nor has it made any showing that Bonhiver possesses any information, or has used or intends to use any information of a confidential nature acquired while he was a government employee. Certainly the criminal trial is a public record and all information therein contained, and all exhibits received or offered at the trial are available to any-

one. Further, any information that is discoverable in a civil suit such as at bar under Rules 26 through 37 of the Federal Rules of Civil Procedure cannot be said to be confidential information within the proscription of the above statute. If, at the trial, it appears that Bonhiver acquired relevant information which would not otherwise be and is not available except through his employment by the government, the court will be required to rule on the admissibility of the proffered evidence or exhibit at that time. Absent any showing at this time, however, the court will not suppress nor attempt to suppress evidence nor speculate or presume that Bonhiver has or had confidential or secret information which he intends to use in this lawsuit or without which it could not successfully be maintained. It must be kept in mind that this suit between two private parties is not one by or against the government as was true in United States v. Mississippi Valley Generating Co., 364 U.S. 520, 548, 81 S.Ct. 294, 5 L.Ed.2d 268 (1960).

The court is not willing to deem "tainted" any evidence or information available to any member of the public or discoverable by any litigant in a civil suit merely because Bonhiver also may have learned of such as a special government employee.

■ Aside from the above reasons for holding that intervenor Bonhiver is not disqualified, is the strong federal policy against interference with state court proceedings, including receiverships. It is the rule in Minnesota that a receiver is an officer of the court that appointed him and subject to the control of that court. Peterson v. Darelius, 168 Minn. 365, 368, 210 N.W. 38, 39 (1926). Certainly this court could not enjoin Bonhiver's activities as receiver. See Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293 (1935). Further, as this court has previously said:

"As applied in receivership cases, the rule is that Federal courts will not interfere with state court custody of property. Hutchinson v. Green, C.C., 6 F. 833 (1881); National Cancer

Hospital of America v. Webster, 251 F.2d 466 (2nd Cir. 1958). This rule is based not only on the statutory mandate which is itself merely a codification of the concept of comity, but also on a recognition of the very nature of the federal system. Thus the possession is the possession of the court that appointed the receiver and should not be divested by the court of coordinate jurisdiction. Bruce v. Manchester and Ky. R.R., C.C., 19 F. 342 (1884)." Drexler v. Walters, 290 F. Supp. 150, 156 (D.Minn.1968).

While the Bank contends that the order it seeks would operate only against Bonhiver individually and not against the receivership estate, it is clear that the order of appointment by which his authority to sue is conferred cannot be attacked collaterally. Grant v. A. B. Leach & Co., 280 U.S. 351, 50 S.Ct. 107, 74 L.Ed. 470 (1930); Cohen v. LaVin, 210 F.2d 550 (2d Cir. 1954); McCullough v. Walker Livestock, Inc., 220 F.Supp. 790, 800 (W.D.Ark.1963). Cf. Hentschel v. Fidelity and Deposit Co. of Maryland, 87 F.2d 833, 838 (8th Cir. 1937). The reason for this rule " * * * arises from the fact that it is the appointing court which is in the best position to interpret the statutes of the State and the order of the court under which the receiver is appointed." United States v. Crocker, 194 F.Supp. 860, 865 (D.Nev.1961) reversed on other grounds 313 F.2d 946 (9th Cir. 1963).

It cannot be ignored that by disqualifying Bonhiver, this court at least indirectly will be ruling on the appropriateness of the state court's choice of a receiver, if not directly so. This court's prior disqualification of Sidney Abramson as counsel for Bonhiver[5] is not at all similar and rests on entirely different grounds since that decision involved the Canons of Legal Ethics and the attorney's position as an officer of this court. The court is not unaware of the Bank's apparent natural desire not to face the facts alleged in intervenor's counterclaim any sooner than possible; but its positive and real purpose seems to be that because of Bonhiver's special government employment all evidence and facts which he has, whether or not generally available to anyone else or discoverable in a civil suit, ought to be suppressed and excluded from the case. The court does not subscribe to this view.

A separate order has been entered in accordance with the above opinion.

---

5. Allied Realty of St. Paul v. Exchange Nat'l Bank of Chicago, 283 F.Supp. 464 (D.Minn. 1968).