MODERN TECHNOLOGIES
CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

and

RJO Enterprises Inc., Intervenor,

and

Semcor, Inc., Intervenor.

No. 98–309C.

United States Court of Federal Claims.

Dec. 21, 1998.

Reissued for Publication March 15, 1999.

Michael A. Gordon, Holmes, Schwartz & Gordon, Rockville, MD, for Modern Technologies Corp.

Patrick Terrence Murphy, U.S. Dept. of Justice, Civil Div.-Commercial Litigation Br., Washington, DC, for United States.

John S. Pachter, Smith, Pachter, et al., Vienna, VA, for Semcor, Inc.

Richard Lee Moorhouse, Holland & Knight, Washington, DC, for RJO Enterprises, Inc.

## ORDER

HARKINS, Judge.

The case file maintained by the Clerk for this post-award claim consists of a mixture of documents to which the public has access and documents that are presently not available to the public. Such documents have been filed under seal on plaintiff's and intervenors' assertions that they contain proprietary information, or on defendant's assertion that they contain protected source selection sensitive information.

Documents presently under seal include: MTC's complaint and related papers, filed April 2, 1998; MTC amended complaint, filed May 8, 1998; the entire administrative record, filed April 17, 1998, with supplements filed by MTC on May 8, 1998, except the RFP and its amendments; and the motion to intervene, filed by Semcor on April 9, 1998. Documents filed with the clerk, without restriction include: RJO's motion to intervene, filed April 3, 1998; Order, April 23, 1998, re intervenors RJO and Semcor; defendant's notice of filing of the administrative record on April 27, 1998; defendant's motion for summary judgment, filed May 8, 1998, with response to plaintiff's motion for preliminary injunction; Semcor's answer to amended complaint, filed May 18, 1998; defendant's answer to amended complaint, filed May 22, 1998; protective order, filed April 9, 1998; and Orders: dated April 3, 1998, on first evidentiary proceeding; April 24, 1998, on four applications for access to materials under protective order; May 11, 998, on eight administrative matters; May 20, 1998, on telephone conference with representatives of MTC, RJO, Semcor and defendant.

This problem originates in the terms of the protective order recommended by the parties and authorized under General Order No. 38, dated May 7, 1998 (G.O. 38) The protective order in this case (MTC order), entered April 9, 1998, with minor differences embodies the standards accepted by the court in G.O. 38. Filing under seal by the parties in G.O. 38 is authorized in the notice to counsel, ¶s 4 through 7; the terms of the protective order are approved in the notice to counsel, ¶s 11 through 15, and in Appendix II which contains an example protective order (Sample order).

Both the Sample order and the MTC order define protected information s information "designated" by a party. ¶ 1(a) and (b). Both the MTC order and the Sample order provide that the confidentiality of information learned pursuant to the protected order "shall be maintained in perpetuity." ¶ 7. Within 30 days after conclusion of all appeals of the action, each private party must destroy all protected information or return all protected information to the originating party. Counsel for each party "may retain one copy of the unredacted pleadings." Sample order, ¶ 8; MTC order, ¶ 9. Any party by written notice may waive protection at any time for any and all information it has designated as protected. Sample order, ¶ 9; MTC order, ¶ 10.

This court is a Federal court of record, 28 U.S.C. § 171. Judicial proceedings on claims against the government as a matter of policy are presumed to be available to the public. The statute provides: "All decisions of the Court of Federal Claims shall be preserved and open to inspection." 28 U.S.C. § 174(b).

The protective order recommended by the parties has resulted in a situation where the general public may be denied access in perpetuity to information in a judicial case file that private contractors and executive agencies have designated as protected proprietary information or protected source selection sensitive information. Such result does not implement the "full and open competition" policies applicable to government procurement contracts nor does it give effect to the presumption that the basis for decision in judicial case files should be available to the public. Availability of judicial public records implements oversight of compliance to statutory and regulatory requirements.

The RFP for this procurement contract was issued July 8, 1997; contact award was approved on October 29, 1997. The GAO decision on MTC's protest was made on March 4, 1998; MTC's complaint in its post-award claim was filed on April 2, 1998. The memorandum of decision was filed under seal on June 24, 1998, and the order on MTC's motion for reconsideration was filed under seal on July 2, 1998. Judgment dismissing the complaint was entered July 2, 1998. Time to appeal expired in 60 days; no appeal of the July 2, 1998, final judgment, was taken.

In order to clarify the status of information subject to the protective order, counsel for MTC, RJO, Semcor and defendant, on July 14, 1998, were each directed to file a statement of its position on waiver under paragraph 10 of the protective order as to "all pleadings and documentary information," and to identify with specificity any protected information not waived. The order also directed that requests for redaction of any part of the memorandum of decision be identified by reference to page and line, and the basis for the request be stated with specificity.

## I. Position on Waiver

Each of the parties declined to waive the protection provided by the MTC order for proprietary or source selection sensitive information applicable to the particular party. MTC, RJO and Semcor each requested that protection continue as to its entire proposal in response to the RFP, documents that contain agency evaluations of its proposal, as well as any documents which analyze the content of the proposals, labor rates, G & A and overhead rates of the 17 private companies that responded to the RFP. Defendant wants the protection to continue with respect to the administrative record, pleadings, and all other documents filed under seal. Defendant points out that the administrative record "reflects proprietary information and the Air Force's evaluative processes, primarily with respect to the parties in this case, but also with respect to additional parties involved in the Omnibus contract bidding process who were not parties to this action."

All parties recommend that the procedure permitted in paragraph nine of the MTC order be followed. That procedure permits the parties' to destroy or return all protected information "within 30 days after the conclusion of this action (including any and all appeals)," and permits each party to retain "one copy of the unredacted pleadings" provided they are marked protected and are properly secured. Application of this procedure could have the result that MTC, RJO, Semcor, and the Departments of Justice and Air Force, would have unredacted copies of case file documents containing protected information, but unredacted copies of documents filed under seal would not be public records available to nonparties.

Reasons for the objections to waiver of the MTC order protections include: (1) the protected information has been filed under seal in reliance on the provision in paragraph 7 of the MTC order that "confidentiality . . . . shall be maintained in perpetuity"; (2) the Trade Secrets Act, 18 U.S.C. § 1905; (3) the Office of Federal Procurement Policy Act, 41 U.S.C. § 423 (1994), Procurement Integrity; (4) the procurement integrity provisions of the FAR (FAR § 3.104); and (5) the GAO

protective order applies to the administrative record as a result of MTC's protest to GAO.

### 1. Reliance on confidentiality in perpetuity

The standards and procedures established in the MTC order and the Sample order were the product of committee actions that had been commenced after enactment on October 19, 1996, of amended 28 U.S.C. § 1491(b), and its effective date of December 31, 1996. The committees were composed of representatives of the court and members of the bar in private practice or in government service. Recommendations of the Bid Protest Working Group were forwarded to the court by the court's Advisory Council on July 17, 1997. The court in G.O. 38 issued the recommended standards on May 7, 1997, for a 12-month trial period. The standard practices supplement the court rules, and applicability to specific cases is subject to the discretion of the judge assigned to a particular case.

The court's rules permit papers or exhibits to be permanently withdrawn. Physical exhibits and *in camera* documents may be disposed of by the clerk. RCFC 77.3(c) provides that no papers or exhibits shall be permanently withdrawn from the clerk's office "except on motion for good cause shown and upon such terms as the court may order." RCFC 77.3(d) provides all physical exhibits and *in camera* documents are to be disposed of by the clerk after notice to the parties "unless withdrawn by a party within 90 days after the final disposition of the case." In documents are delivered by the parties to a judge for examination; they are not filed with the clerk.

Documents filed with the clerk under seal are kept segregated from other materials in the case file. For archival purposes, documents filed under seal are not accepted by the Archivist for transfer to a Federal Record Center (FRC). Retention of these segregated materials imposes a space and handling burden on the court.

Management of Federal government records is the responsibility of the head of each Federal agency, the Archivist of the United States, and the Administrator of General Services. 44 U.S.C. §§ 2901–09. The term Federal agency includes "any establishment in the legislative or judicial branch of the Government," except the Supreme Court, Senate, House of Representatives, and Architect of the Capitol. 44 U.S.C. § 2901(14). "Records" includes all machine readable materials and other documentary materials regardless of physical form "made or received by an agency ... under Federal law or in connection with the transaction of business and preserved or appropriate for preservation by that agency ... as evidence of the organization, functions, or other activities of the Government." 44 U.S.C. §§ 2901(1), 3301. The agency head is required to submit to the Archivist schedules proposing the disposal of records accumulated in the custody of the agency. 44 U.S.C. § 3303. Records pertaining to claims and demands by or against the Government may not be disposed of by the head of an agency until the claims and accounts have been settled and adjusted in the GAO, except on written approval of the Comptroller General. 44 U.S.C. § 3309.

The Judicial Conference schedule for disposition of records of the Court of Federal Claims, dated November 6, 1995, includes the following:

| Type of Record | Disposition |
| --- | --- |
| A. Case records | |
| 2. Sealed records. Those case records which have been sealed by court order while such court order is in effect. | |
| c. Permanent sealed records. | Maintain at the court location in a separate file from the related case file. When the order sealing the records is vacated by the |

court, dispose of in accordance with the pertinent provisions of this schedule for the related case file.

3. Docket Sheets.

   b. All other docket sheets.      Permanent.

Machine readable tapes of dockets are to be turned over to the National Archives with complete documentation when cases are closed and the records become inactive.

7. Civil case files, including transcripts and minutes.

   b. (2). Case files dated 1970 or later which terminated during or after trial.      Permanent.

8. Case files of the Court of Claims      Permanent.

10. Case files of the United States Claims Court (United States Court of Federal Claims—October 29, 1992) (including cases transferred from the Court of Claims).

   a. Cases dealing with Indian Claims.      Permanent.

   b. All other cases.      Dispose when 50 years old.

The Judicial Conference schedule for disposition of United States Court of Federal Claims records does not clearly establish whether post-award procurement case files are permanent records for archival purposes. See A7b(2), A10. The schedule is clear, however, that permanent sealed records filed with the clerk must be maintained at the court location in a separate file from the related case file until vacated by court order. Inasmuch as most of the evidentiary materials in this case were filed under seal in reliance on the protection provided by the MTC order, any justification for removal of that protection must be established as both reasonable and in the public interest. This problem is complicated by possible exposure of the parties and their representatives to civil or criminal penalties.

## 2. Trade Secrets Act

This act, recodified in 1948 in 18 U.S.C. § 1905, stems from customs duties provisions in R.S. § 3167 (1894) and 19 U.S.C. § 1335 (1943 ED.). Trade secrets referred to an unpatented secret, commercially valuable plan, appliance, formula or process used in connection with preparation for sale of trade commodities. Section 1905—Disclosure of confidential information generally—is a criminal statute that prohibits by any officer or employee of the United States or any defendant or agency thereof to disclose or make known "in any manner or to any extent not authorized by law any information coming to him in the course of his employment on official duties." Violators may be fined not ore than $1000 or imprisoned not more than one year, or both, and removed from office or employment. Section 1905 was amended in 1980 to apply specifically to "agents" of the DOJ retained in connection with enforcement of antitrust laws (15 U.S.C. § 1311(j)). In 1992, section 1905 was amended to include "any person acting on behalf of the Office of Federal Housing Enterprise Oversight."

Section 1905 bars disclosures "not authorized by law." *Shell Oil Co. v. Dept. Of Energy*, 477 F.Supp. 413 (D.C.Del.1979), *aff'd*

631 F.2d 231 (3d Cir.1980), *cert. denied,* 450 U.S. 1024, 101 S.Ct. 1730, 68 L.Ed.2d 219 (1981). Any information that is discoverable in a civil suit under the Federal Rules of Civil Procedure cannot be confidential information under this section. *Exchange Nat'l Bank of Chicago v. Abramson,* 295 F.Supp. 87 (D.C.Minn.1969); *Pleasant Hill Bank v. United States,* 58 F.R.D. 97 (D.C.Mo.1973).

This court is authorized to prescribe rules for the conduct of its business. 28 U.S.C. § 2071. The rules of this court are based on the Federal Rules of Civil Procedure, and follow closely the Fed.R.Civ.P. chapter titles and rule numbers. Accordingly, it is improbable the penalties provided in the Trade Secrets Act as amended in 18 U.S.C. § 1905 apply to information filed under seal by the parties or their agents or employees in the case file for this post-award claim.

### 3. Office of Federal Procurement Policy Act

The procurement integrity provision of the OFPPA (41 U.S.C. § 423 (1994)) underwent extensive structural amendment as part of the Federal Acquisition Reform Act of 1996, also cited as the Clinger–Cohen Act of 1996. 41 U.S.C. Chapter 4—Procurement Procedures. The function of the Office of Personal Procurement Policy to provide overall direction to Government-wide procurement policies, regulations and procedures, in the Executive Branch was restated and relocated. 41 U.S.C. § 404(a) (Supp.II, 1997). Section 423 in 1994 was captioned: "Procurement Integrity"; as amended, the caption is: "Restrictions on disclosing and obtaining contract bid or proposal information or source selection information." The legislative history indicates that this and other changes were to replace current law with simple prohibitions and clearer administrative standards by focusing on the information to be protected. H.R. Report No. 104–222, August 1, 1995, p. 49.

Section 423 in 1994 contained 16 subparts (a) through (p); as amended, this section contains 8 subparts (a) through (h). Both versions define protected information, and both provide criminal and civil penalties, as well as administrative sanctions, for unauthorized disclosure of that information.

Section 403 in 1994 contained definitions (1) through (15), many with multiple subparts; only subsection (f) of the term "commercial item" (No. 12) was amended in the 1996 Act. Section 403(1)(B) defines "executive agency" so as to include the Department of the Air Force. Section 403(2) defines the term "procurement" broadly:

> The term "procurement" includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and close-out.

Section 423 prohibits present or former government officials, employees, advisors or representatives to disclose, other than as provided by law, bid or proposal information or source selection information "before the award" of an Air Force procurement contract to which the information relates— § 423(a)— and prohibits a person other than as provided by law, knowingly to obtain such information "before the award" of an Air Force procurement contract to which the information relates— § 423(b). The term "official" includes an officer, as defined in 5 U.S.C. § 2104, an employee as defined in 5 U.S.C. § 2105, and a member of the uniformed services as defined in 5 U.S.C. § 2101(3). Section 423(f)(7). "Officer" as defined in 5 U.S.C. § 2104 includes a justice or judge of the United States and an individual who is (1) appointed in the civil service by official action of designated Executive officials or a court of the United states, (2) engaged in the performance of a Federal function, and (3) subject to supervision by designated Executive officials or by the Judicial Conference of the United States while in performance of duties of office.

The term "contractor bid or proposal information" means information submitted as part of or in connection with a bid or proposal to enter into a Federal agency procurement contract, if that information has not been previously made available to the public or disclosed publicly. The definition means any of the following:

> (A) Cost or pricing data (as defined by section 2306a(h) of Title 10, with respect to

procurements subject to that section, and section 254b(h) of this title, with respect to procurements subject to that section).

(B) Indirect costs and direct labor rates.

(C) Proprietary information about manufacturing processes, operations, or techniques marked by the contractor in accordance with applicable law or regulation.

(D) Information marked by the contractor as "contractor bid or proposal information", in accordance with applicable law or regulation. Section 423(f)(1).

The term "source selection information" means information prepared for use by a Federal agency for the purpose of evaluating a bid or proposal to enter into a Federal agency procurement contract, if that information has not been previously made available to the public or disclosed publicly. The definition means any of the following:

(A) Bid prices submitted in response to a Federal agency solicitation for sealed bids, or lists of those bid prices before public bid opening.

(B) Proposed costs or prices submitted in response to a Federal agency solicitation, or lists of those proposed costs or prices.

(C) Source selection plans.

(D) Technical evaluation plans.

(E) Technical evaluations of proposals.

(F) Cost or price evaluations of proposals.

(G) Competitive range determinations that identify proposals that have a reasonable chance of being selected for award of a contract.

(H) Rankings of bids, proposals, or competitors.

(I) The reports and evaluations of source selection panels, boards, or advisory councils.

(J) Other information marked as "source selection information" based on a case-by-case determination by the head of the agency, his designee, or the contracting officer that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information rates. Section 423(f)(2).

Other provisions in Section 423 on procurement procedures apply to actions required when agency procurement officials are contacted by offerors regarding possible non-Federal employment, and to a 1-year prohibition on former Federal officials in designated types of work against acceptance from a contractor of compensation as an employee, officer, director or consultant of the contractor. Sections 423(c) and (d). Penalties and administrative sanctions are grouped in Section 423(e).

- (1) Conduct that constitutes a violation of subsections (a) or (b) of Section 423 for the purpose of either exchanging information for anything of value, or obtaining a competitive advantage in award of a Federal procurement contract is subject to imprisonment for not more than 5 years or fined as provided in Title 18, or both. Section 423(e)(1).

- (2) The Attorney General may bring a civil action in an appropriate district court against any person whose conduct constitutes a violation of subsections (a), (b), (c) or (d) of Section 423. Such conduct is subject to a civil penalty of not more than $50,000 for each violation, plus twice the amount of compensation received or offered for the prohibited conduct. Organizations that engage in such conduct are subject to a civil penalty of $500,000, plus twice the amount of compensation received or offered. Section 423(e)(2).

- (3) Administrative sanctions for violations of subsections (a), (b), (c) or (d) include (1) cancellation of the agency procurement if a contract has not yet been awarded, (2) recission of a contract after award, (3) initiation of suspension or debarment proceedings under FAR, and (4) initiation of adverse personnel action pursuant to procedures in 5 C.F.R. Chapter 75, or other applicable law or regulation. Section 423(e)(3). On a contract recission, the United States may recover the amount expended under the procurement contract. Section 423(e)(3)(B).

### 4. FAR § 3.104

FAR § 3.104 implements the authority of the Office of Federal Procurement Policy to provide overall direction of Government-wide procurement polices, regulations and procedures for the executive branch. 41 U.S.C. § 404(a) (Supp.II, 1997). In connection with the procurement integrity provisions of the Federal Acquisition Reform Act of 1996, FAR § 3.104–1(b)5 warns:

> Agency employees are reminded that there are other statutes and regulations that deal with the same or related prohibited conduct, for example—(5) Other laws such as the Privacy Act (5 U.S.C. § 552a) and the Trade Secrets Act (18 U.S.C. § 1905) may preclude release of information both before and after award (*see* § 3.104–5).

FAR § 3.104–5(f) includes:

> f) Nothing in this section shall be construed to authorize . . .
>
> > (3) The release of information after award of a contract or cancellation of a procurement if such information is contractor bid or proposal information or source selection information which pertains to another procurement; or
> >
> > (4) The disclosure, solicitation, or receipt of bid or proposal information or source selection information after award where such disclosure, solicitation, or receipt is prohibited by law. . . .

### 5. GAO Protective Order

The GAO protective order (GAO order), entered November 26, 1997, in File B–278695 on MTC's bid protest, File B–278695, contains provisions that are similar to the MTC order in this case. Paragraph 2 of the GAO order limits disclosure of protected material "only to GAO and to individuals authorized by this protective order." Paragraph 6 of the GAO order requires each covered individual to "take all necessary precautions to prevent disclosure of protected material" and provides that confidentiality "shall be maintained in perpetuity." Paragraph 8 of the GAO order provides that violation of its terms may result in imposition of sanctions, including referral to appropriate bar associations or other disciplinary bodies, restriction

on practice before GAO, and gives notice that improperly disclosed information entitles an injured party to all legal remedies, including breach of contract.

Semcor is concerned that release of information in the administrative record may subject counsel to sanctions under the GAO order. The AR includes documents prepared by the Air Force and other parties solely for the GAO proceedings that include proprietary information of private companies.

The GAO order was modified on April 2, 1998, by the GAO in a notice to MTC and the Air Force, re File B–278695 *et al.*, captioned: Notice of Limited Leave to Release Protected Information to a Federal Court. Paragraph 2 provides:

> Use of information protected under the GAO protective order will be governed by the protective order issued by the Court. MTC must provide a copy of the Court's protective order to GAO upon issuance.

Paragraph 3 provides:

> All terms of the GAO protective order not otherwise modified by this notice remain in effect.

## II. Requests for Redaction

MTC has no objection to the release of Memorandum of Decision in its entirety.

Defendant and Semcor request that the June 24, 1998, Memorandum of Decision be redacted to remove the following:

> Page 12—Most Probable Cost Data in Column C–2

MTC specifically objects to the redaction of the Most Probable Cost data column from the chart on page 12. This information was released without restriction in the debriefing on November 13, 1997, of bidders in the Source Selection Program.

RJO did not request any redaction of information on page 12 of the Memorandum of Decision. Defendant states that the intervening parties have indicated consent to defendant's redaction proposals.

Defendant and Semcor request redaction to remove the following:

> Page 16—all information in the Composite Base Rate columns in both charts.

RJO requests redaction of the RJO rate in the bottom chart on page 16.

Defendant and Semcor request that information applicable to the standard deviation data in sentences 5 and 6 of the first full paragraph on page 16.

Defendant points out that its proposed redactions are of a minimal nature. It is true they are few in number. Redaction of the material on page 16, however, would result in the deletion of substantive information that is a necessary part of the analysis and an element basic to the ultimate decision.

*Conclusion*

From the foregoing it is clear that the question of making the entire case file on MTC's claim available to the public also involves problems in the wordage of the MTC order, in the scope of G.O. 38, and action permitted under RCFC 77.3(c) and (d). Solution of those related problems apply to various stages of the litigating process and are not addressed in this order. The scope of public access to initiation of pleadings, discovery issues, testimony and relevant evidence, may justify application of differing concepts at particular times.

The substantive issues in this case are resolved in the Memorandum of Decision, which was not appealed by any party. Substantive issues are not subject to reopening by reason of any action taken now to change the status of materials filed under seal that remain in the record.

The essential consideration on the issue of public access to case file materials in this MTC claim is the stage of litigation when the decision on public access is to be made. At this time, this case concerns an RFP in the A & AS program issued in July 1997; five contracts that were awarded in October 1997; a GAO decision on protests by MTC and other unsuccessful bidders on March 4, 1998; and final judgment in this court on July 2, 1998. There has been no appeal; the procurement is concluded and the litigation on the contract is terminated.

The Omnibus A & AS program involved award of five contracts that covered a 3-year period and involved multi-functional tasks. Each of the five awardees has a contract for a minimum guaranteed amount of $25,000. During the 3-year period, the five awardees will compete on subsequent task orders that will result in new and separate contracts. The total combined value of all contracts to be issued was estimated to be $250 million.

When the new task order contracts are negotiated, cost and pricing data, indirect cost and direct labor rates and other proprietary information will reflect then current conditions and will differ from comparable items in the A & AS omnibus procurement. Air Force source selection sensitive information also will relate to different conditions then current.

When a procurement and resulting litigation have reached the status now present in this case, proprietary information and source selection sensitive information that became part of the AR and the case have minimal current value. There is little reason to continue to place the elements of this procurement beyond availability to the public. Such availability is needed to assure that agency conduct implements full and open competition objectives and oversight of compliance with statutory and regulatory requirements.

**IT IS ORDERED:**

1. All documents and other materials filed in this docket under seal pursuant to the protective order filed April 9, 1998, are to be removed from segregated storage and transferred to storage in the general case file pursuant to the schedule in No. 3 below.

2. The parties and counsel are authorized to appeal the issue defined in No. 1 above. Any appeal is limited to that issue and is to be filed on before 60 days from the date of this order.

3. If an appeal is taken, status as public records will be as there determined. In the absence of an appeal, the action is No. 1 above will be effective 60 days after the date of this order.